795 So.2d 423 (2001)
Frances Broussard HOLLIDAY
v.
James S. HOLLIDAY, Jr.
No. 2000 CA 0533.
Court of Appeal of Louisiana, First Circuit.
August 17, 2001.
Rehearing Denied September 28, 2001.
*425 Robert M. Hoyland, Amy E. Counce, Baton Rouge, for Plaintiff-Appellant Frances Broussard Holliday.
James Don Thomas, II, Baton Rouge, for Defendant-Appellee James S. Holliday, Jr.
Before: PARRO, FITZSIMMONS, GUIDRY, KLINE, and CLAIBORNE, JJ.[1]
PARRO, J.
Frances Broussard Holliday appeals the judgment of the trial court denying her request to reform a contract between her and her former husband, James S. Holliday, Jr., which governed her receipt of lump-sum periodic alimony payments.[2] We reverse and render.

FACTUAL AND PROCEDURAL BACKGROUND
Frances Broussard Holliday and James S. Holliday, Jr. were married on June 19, 1965. On October 2, 1992, Mrs. Holliday filed a petition for divorce, in which she sought an award of alimony pendente lite and permanent alimony.[3] Mr. Holliday answered and filed a reconventional demand. On November 23, 1992, while the divorce was pending, the trial court rendered a judgment pursuant to a stipulation between the parties, in which Mr. Holliday was ordered to pay Mrs. Holliday alimony *426 pendente lite in the sum of $300 per week, payable on Friday of each week, retroactive to October 2, 1992. In the May 19, 1993 judgment of divorce, the trial court ordered Mr. Holliday to continue paying Mrs. Holliday alimony pendente lite[4] until the first of the following events occurred: (1) a community property settlement was effected; (2) sixteen weeks passed commencing May 21, 1993; or (3) the fault issue was determined and permanent alimony payments commenced. The first of these to occur was the passage of sixteen weeks, and Mr. Holliday made the last $300 payment on September 10, 1993.
In December 1993, the parties entered into a contract entitled, "Alimony and Indemnity Agreement" (the agreement), in which Mr. Holliday agreed to pay Mrs. Holliday:
lump-sum periodic alimony in the amount of TWO HUNDRED FIFTY AND NO/100 ($250.00) DOLLARS per week for a period of Two Hundred Eight (208) weeks, payable on Friday of each week, commencing Friday, January 7, 1993.
The agreement, an authentic act, was prepared by counsel for Mr. Holliday, signed by Mr. Holliday on December 9, 1993, and signed by Mrs. Holliday on December 20, 1993. Mr. Holliday made his first $250 payment pursuant to the agreement on Friday, January 7, 1994, and made regular payments thereafter. On January 7, 1997, Mr. Holliday sent Mrs. Holliday a letter, informing her that he was enclosing the final alimony check of $250. With the letter, he also enclosed a copy of the agreement, upon which he had highlighted the stated commencement date for payments of January 7, 1993. He concluded in the letter that "[t]he final date would, of course, be January 7, 1997."
Mrs. Holliday disagreed and on February 24, 1999, filed a petition for past due alimony. She alleged Mr. Holliday had failed to pay the entire amount due to her and still owed her $13,000 for 52 weeks of the 208-week period called for in the agreement. She further alleged that the agreement contained a typographical error, in that the date on which the alimony payments were to commence was stated as Friday, January 7, 1993, when in fact, the correct date should have been typed as Friday, January 7, 1994. In an amending petition, Mrs. Holliday asked that the agreement be reformed to reflect the correct date of Friday, January 7, 1994, as the date on which the 208 weekly alimony payments were to begin. Mr. Holliday filed an answer generally denying the allegations of the petitions and asserting that the agreement was an authentic act, that its language was plain and unambiguous, and that it constituted the agreement of the parties. He also said he had paid Mrs. Holliday "the aggregate amount of money due under the contract."
At the trial, Mr. Holliday contended his intention had been to pay a total of $52,000, which he had paid. Regarding those payments, Mr. Holliday said he paid $300 per week from January 8, 1993, through September 10, 1993;[5] he made no further payments in 1993, but after this lawsuit was filed, he learned through discovery that there was a "gap" of several months and made one payment to cover it;[6] and he paid $250 per week from January *427 7, 1994, through January 7, 1997.[7] He said the agreement's stated date of January 7, 1993, reflected his understanding as to when alimony payments were to begin.
Mrs. Holliday confirmed she had received the payments described by Mr. Holliday, but said she did not agree that the January 7, 1997 payment was the final alimony payment. She said when she signed the agreement, her understanding was that the alimony payments were to begin Friday, January 7, 1994, and that she would receive 208 payments after that date. Mrs. Holliday's former attorney, Mary Olive Pierson, also testified. Ms. Pierson said she represented Mrs. Holliday during 1993, when the agreement was negotiated and confected. She said she participated in its preparation, but the final document was prepared by Mr. Holliday's attorney and forwarded to her office after Mr. Holliday had signed it. During Ms. Pierson's testimony and throughout the trial, the trial court consistently ruled inadmissible the parol evidence that Mrs. Holliday sought to introduce concerning the error in the agreement and the true intent of the parties.[8] Mrs. Holliday made a complete proffer of the evidence, which included several documents and the testimony, on direct and cross-examination, of herself, Ms. Pierson, and Mr. Holliday. Judgment was rendered in favor of Mr. Holliday, and this appeal followed.
Mrs. Holliday contends on appeal that the trial court erred: (1) in excluding parol evidence to show the true intent of the parties and explain the contradictory terms of the agreement; (2) in finding that Mr. Holliday did not owe past due alimony; and (3) in finding that Mr. Holliday's payments to Mrs. Holliday in satisfaction of his obligation to pay alimony pendente lite satisfied his separate and distinct obligation to pay her lump-sum periodic alimony under the later "Alimony and Indemnity Agreement."

MOTION TO STRIKE
Mr. Holliday filed a motion in this court, seeking to strike attachments to the reply brief submitted by Mrs. Holliday. Consideration of the motion was deferred to the merits. At this time, we deny the motion, finding that the diagrams attached to the brief were merely graphic representations of Mrs. Holliday's arguments in the trial court and on appeal.

PAROL EVIDENCE
The first assignment of error concerns the trial court's refusal to admit certain testimony and documentary evidence by which Mrs. Holliday sought to establish the error in the agreement and the correct date on which Mr. Holliday's alimony payments were intended to begin. Both parties acknowledged that January 7, 1993, fell on a Thursday, not on a Friday. However, Mr. Holliday argued that, being an authentic act, parol evidence could not be introduced to modify its stated terms. Apparently accepting this contention, the trial court refused to allow any testimony or *428 documentary evidence concerning the intended or correct date.
We disagree with this decision on the basis of legal error. Although parol evidence is generally not admissible to vary or contradict the terms of an authentic act, in the interest of justice, it may be admitted to prove a vice of consent. See LSA-C.C. art. 1848; Sonnier v. Boudreaux, 95-2127 (La.App. 1st Cir.5/10/96), 673 So.2d 713, 718. Louisiana Civil Code article 1949 states that error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. Comment (d) to Article 1949 states that the granting of relief for error presents no problem when both parties are in error. When that is the case, the contract may be rescinded or the instrument that contains the contract may be reformed to reflect the true intent of the parties. LSA-C.C. art.1949, Comment (d). Between two parties to an instrument, parol evidence is admissible to show fraud, mistake, illegality, want or failure of consideration, or to explain an ambiguity when such explanation is not inconsistent with the written terms. Scafidi v. Johnson, 420 So.2d 1113, 1115 (La.1982).
The burden is on the party seeking reformation to establish the necessary elements by clear and convincing proof, parol evidence being admissible for this purpose. The most commonly used ground for reformation is mutual mistake of the parties. Agurs v. Holt, 232 La. 1026, 95 So.2d 644, 646 (1957). A mutual mistake is a mistake shared by both parties to the instrument at the time of reducing their agreement to writing. Succession of Jones v. Jones, 486 So.2d 1124, 1127 (La.App. 2nd Cir.), writ denied, 489 So.2d 249 (La.1986).
In First State Bank & Trust Co. v. Seven Gables, Inc., 501 So.2d 280, 285-86 (La.App. 1st Cir.1986), writ denied, 502 So.2d 103 (La.1987), this court allowed parol evidence in a dispute over a guaranty agreementan authentic act. The court found that a discrepancy contained in the guaranty agreement, in referring to a note dated January 19, 1977, when the note itself was dated January 20, 1977, was clearly a mutual mistake. The court reformed the guaranty agreement to reflect the correct date. Similarly, in McCarroll v. McCarroll, 96-2700 (La.10/21/97), 701 So.2d 1280, 1286, parol evidence was allowed to clarify an ambiguity in an authentic act, namely, whether retirement benefits were contemplated by the parties when they used the term, "movable property" in that act.
In the case we are reviewing, the face of the document contains an obvious error. The stated combination of day and date in the agreement, upon which the lump-sum periodic alimony payments were to commence, "Friday, January 7, 1993," does not exist. As a result, the agreement is inherently ambiguous. It can be interpreted in any of three ways: (1) payments were to begin Thursday, January 7, 1993; (2) payments were to begin Friday, January 8, 1993; or (3) payments were to begin Friday, January 7, 1994. The parties have acknowledged the date discrepancy, and it is a mutual error.[9] Clearly, both parties intended for payments to begin at some time, and neither intended to designate a non-existent date.
Moreover, the date for commencement of the payments directly affects the primary cause of the agreement, namely, the *429 amount and duration of lump-sum periodic alimony payments. The date upon which the 208 payments were to begin would control the duration and, ultimately, the amount of alimony. Because the error bears directly on the cause of the agreement, the trial court erred in excluding parol evidence concerning the intent of the parties.
Mr. Holliday urged this court to remand the case, if we were to find the trial court erred in excluding parol evidence. However, under Louisiana Code of Civil Procedure article 1636, when the trial court rules against the admissibility of evidence, it can allow the party offering the evidence to make a complete record, or it can permit the party to make a statement of the nature of the evidence. On appellate review of these two situations, the jurisprudence indicates that when legal error is found and a complete record has been made, the appellate court is to conduct a de novo review of the record, including the proffered evidence. Smith v. Smith, 615 So.2d 926, 932 (La.App. 1st Cir.), writ denied, 617 So.2d 916 (La.1993). On the other hand, if just a summary has been proffered and the appellate court determines the evidence should have been admitted, the matter is remanded for the trial court to hear the entire evidence. See Fussell v. Roadrunner Towing & Recovery, Inc., 99-0194 (La.App. 1st Cir.3/31/00), 765 So.2d 373, 377, writ denied, 00-1264 (La.6/23/00), 765 So.2d 1042.
In the case before us, the court allowed a complete record to be made. Because the record is complete, this court will conduct a de novo examination, including the proffered evidence, and reform the agreement to reflect the correct date, as revealed by the evidence in the record. In the course of that examination, we will address Mrs. Holliday's remaining assignments of error.

REVIEW OF PROFFERED EVIDENCE
Ms. Pierson testified that there was an error on the face of the document, in that the correct day and date upon which payments were to commence was Friday, January 7, 1994. She noted that January 7, 1993, was not a Friday; but January 7, 1994, was a Friday. Ms. Pierson also observed this was a common error, stating:
[T]he document is being signed in December of '93, ... in the latter part of 1993 which is the time when a lot of people make mistakes about the year which is about to change.
Ms. Pierson further stated that she and Mrs. Holliday had negotiated for 208 weekly paymentsbeing four years starting in January of 1994, and never intended for the agreement to be retroactive to an earlier date. She said in her practice, if she had intended it to be retroactive, "the document would have so stated."
Ms. Pierson said her negotiations with Mr. Holliday's attorney concerning permanent alimony began in the summer of 1993 while Mrs. Holliday was still receiving alimony pendente lite payments of $300 per week, pursuant to a judgment of the court. She identified an August 2, 1993 letter from Mr. Holliday's attorney, along with an enclosed "counter letter" signed by Mr. Holliday, in which he proposed to pay permanent alimony in the amount of $200 per week for 208 weeks, commencing Friday, August 6, 1993.[10] *430 Ms. Pierson said the parties continued to negotiate, eventually agreeing to the proposed 208 payments, but in the amount of $250 and beginning January 1994. She said no one had ever proposed that the $250 per week would commence any earlier than Mr. Holliday's "counter letter" offer of August 6, 1993. Ms. Pierson testified that after Mr. Holliday stopped making the alimony payments in 1997, Mrs. Holliday called her. At that time, she reviewed the agreement to see what might have prompted Mr. Holliday's abrupt cessation of alimony payments and realized there was an error on the face of the document "simply caused by the fact that the year was about to change" when the agreement was prepared and signed. Realizing she would probably be called as a witness, she advised Mrs. Holliday to get a new attorney for the case.
Mrs. Holliday also testified, reiterating much of the testimony already admitted, and adding that although Mr. Holliday had stopped making regular weekly payments on January 7, 1997, he had made one additional payment of approximately $1,700 through his attorney within the last several months before trial. She identified copies of a number of checks, each in the amount of $300, received from Mr. Holliday in 1992 and 1993, and stated her understanding was that these were for temporary alimony and were not applicable to the permanent alimony payable under the agreement. She understood the permanent alimony payments were to start in January 1994 and to continue on a weekly basis for four years. On cross-examination, Mrs. Holliday admitted signing the agreement on December 20, 1993, and further admitted that the language concerning the commencement date of payments as Friday, January 7, 1993, was in the document at the time she signed it.
Mr. Holliday acknowledged that, after checking a calendar, he realized that January 7, 1993, was not a Friday, but that January 7, 1994, was a Friday. Nevertheless, he said the recitation of Friday, January 7, 1993, was not an error, stating emphatically:
Absolutely unequivocally that is my testimony. It is not an error. I signed this document. I'm a lawyer. And it was negotiated, compromised, made retroactive and there is no error in that document.
With reference to the $300 checks identified by Mrs. Holliday, he acknowledged that these payments were made pursuant to a judgment stating they were to end "16 weeks after something." Reviewing the actual terms of the divorce judgment, Mr. Holliday admitted those payments were described as alimony pendente lite. He said he had no reason to doubt that the $300 per week payments he made during 1993 were alimony pendente lite, pursuant to the terms of the judgment of divorce. In accord with that judgment, he stopped paying Mrs. Holliday approximately 16 weeks after May 21, 1993.
Mr. Holliday said he resumed payments in January 1994, paying $250 per week until January 7, 1997. After the suit was filed, he learned there was a "missing gap" for some months in 1993, and made a payment in 1999 to cover this. He admitted the agreement said nothing about retroactivity, but concluded the effective date for payments was January 7, 1993, stating, "The document speaks for itself."
Mr. Holliday said the agreement represented a compromise, stating he "started *431 out offering $40,000," and compromised at $52,000. In connection with that discussion, he reviewed the "counter letter" document in which he had made an offer of $200 per week for a period of 208 weeks commencing Friday, August 6, 1993. While he admitted that document said nothing about any payments being made prior to that date, he argued that, "we were compromising, and we went up $50.00 a week and the trade-off was the retroactivity." He said, however, he knew of no document or written correspondence or communication memorializing the retroactive effect of the December 1993 agreement. Mr. Holliday admitted the agreement was generated in his attorney's office, so the mistake reciting Friday, January 7, 1993, was created by his attorney. Mr. Holliday said that between January 7, 1993, and the present, he had paid the $52,000 he had intended to pay.

INTERPRETATION AND REFORMATION OF THE AGREEMENT
In interpreting contracts, we are guided by the general rules contained in Louisiana Civil Code articles 2045-2057. Interpretation of a contract is the determination of the common intent of the parties. LSA-C.C. art. 2045. Whether a contract is ambiguous or not is a question of law. When the terms of a contract are susceptible of more than one interpretation, it is ambiguous. Osborne v. Ladner, 96-0863 (La.App. 1st Cir.2/14/97), 691 So.2d 1245, 1254. Where the terms of the agreement are unclear, ambiguous, or will lead to absurd consequences, the court may go beyond the original agreement to determine the true intent of the parties. Paddison Builders, Inc. v. Turncliff, 95-1753 (La.App. 1st Cir.4/4/96), 672 So.2d 1133, 1136-37, writ denied, 96-1675 (La.10/4/96), 679 So.2d 1386.
A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. LSA-C.C. art.2053; Diamond B Constr. Co., Inc. v. City of Plaquemine, 95-1979 (La.App. 1st Cir. 4/30/96), 673 So.2d 636, 639. Articles 2056 and 2057 provide that any doubt or ambiguity in an agreement which cannot otherwise be resolved, must be interpreted against the party who prepared the contract, by whose negligence or fault the doubt arises. See Guarantee Systems Constr. & Restoration, Inc. v. Anthony, 97-1877 (La.App. 1st Cir.9/25/98), 728 So.2d 398, 404, writ denied, 98-2701 (La.12/18/98), 734 So.2d 636.
As we have previously noted, the agreement is inherently ambiguous. Because of the error in the statement of the day and date, the time for commencement of lump-sum periodic alimony payments could have been any of three different dates. When the proffered evidence is considered, along with the terms of the agreement itself, the evidence of the dates and amounts of payments actually made, and the conduct of the parties, the conclusion of this court is that the 208 payments of $250 per week were to commence on Friday, January 7, 1994.
Friday, January 7, 1994, is the day Mr. Holliday began making payments under the agreement. Had Mr. Holliday intended retroactive application from the beginning, he should logically have made his "fill-in-the-gap" payment for the last months of 1993 in December, when he signed the agreement, or in January, when he made the first $250 payment, instead of waiting until after suit had been filed. The timing of Mr. Holliday's payments refutes the retroactivity argument.
*432 Moreover, the agreement by its terms calls for 208 payments, a statement that is meaningless if the parties intended to include payments already made during 1993, which would result in a different number of actual payments to reach $52,000.[11] In fact, Mr. Holliday never made 208 payments. He made 36 payments through September 1993, 156 payments from January 1994 through January 1997, and one "fill-in-the-gap" payment in 1999. This is a total of 193 payments. Therefore, the specific term, "208 weeks," in the agreement also refutes the retroactivity argument.
Furthermore, although Mr. Holliday contends he intended to pay a total of $52,000, including the alimony pendente lite payments made during 1993, he had not yet paid that amount when he stopped making payments in January 1997 and advised Mrs. Holliday that the alimony payments had ceased. As of that date, he had paid only $49,800 ($10,800 during 1993 and $39,000 from January 1994 through January 1997). Also, considering the terms of his "counter letter" offer in August 1993, the 208 weeks of $200 per week he offered would have paid Mrs. Holliday $41,600 from that date forward. It is not reasonable to assume that Mrs. Holliday would have rejected that offer and continued negotiating, only to accept an agreement several months later worth only $39,000 to her. Here, the conduct of both parties refutes Mr. Holliday's interpretation.
When substantive laws are enacted, they have only prospective application unless the legislature specifies they are to be retroactive. LSA-C.C. art. 6. Thus, retroactivity is the exception and, when substantive rights are involved, must be clearly stated. A contract has the effect of law between the parties. LSA-C.C art. 1983. Although there are no codal articles specifically addressing retroactivity in contracts, the same general principle may be applicable in this context, in that a contract, which creates substantive law for the parties, should not be retroactive unless clearly stated. In support of this conclusion, we note that contracts usually contemplate prospective relationships, obligations, and actions. Article 1906 defines a contract as an agreement by two or more parties whereby obligations are created, modified, or extinguished. This definition has prospective connotation, suggesting that the effect of the contract occurs at or beyond its execution by the parties. See also LSA-C.C. arts. 1777, 1784, and 1785. Accordingly, if the obligation created by a contract is intended to have retroactive application, that is an exceptional circumstance and should be clearly spelled out. In the agreement confected by Mr. and Mrs. Holliday, there is no mention of retroactivity. In the absence of such a specification, therefore, the most reasonable interpretation of the agreement is that it was intended to have prospective application only. Therefore, the omission of this customary term, under these circumstances, further refutes the retroactivity contention.
Obligations can arise from contracts and other declarations of will, or by operation of law. LSA-C.C. art. 1757. In this case, alimony pendente lite was specifically awarded in two judgments of the trial court. According to the divorce judgment, those payments of $300 per week were to terminate 16 weeks after May 21, 1993, if neither of the other stated conditions had occurred. Mr. Holliday ceased *433 making alimony pendente lite payments on September 10, 1993, which satisfied the obligation imposed by the judgment of divorce. The agreement for lump-sum periodic alimony payments created a separate and distinct contractual obligation, which could not be satisfied by payments already made in satisfaction of another obligation, unless the agreement so stated. See LSA-C.C. arts. 1864 and 1865. However, the agreement made no reference to the previous alimony pendente lite payments as constituting partial satisfaction of the new obligation to pay lump-sum periodic alimony. Accordingly, the lack of such imputation in the agreement undermines the retroactivity contention.
Finally, the common typographical date error in generating documents at the end of the year, when force of habit often results in the use of the current year's date, rather than the coming year's date, lends further support to the conclusion that this document, signed in December 1993, was intended to show a commencement date for future payments to begin Friday, January 7, 1994. This habitual conduct, which so often produces date errors of this kind in documents, also negates the retroactivity argument. And, because this error and the ambiguity resulting from it were created through the fault of Mr. Holliday's attorney, the ambiguity should be interpreted against him.
A written instrument may be reformed to correct an error or mistake in the contract, so as to make it accurately express the true intent and agreement of the parties. First State Bank, 501 So.2d at 285. Having found an error in the agreement, and having determined from the complete record, including the proffered evidence, that the true intent of the parties was for lump-sum periodic alimony payments to commence Friday, January 7, 1994, the document will be reformed accordingly.
As previously noted, because the amount of the "fill-in-the-gap" payment is unclear, the record does not accurately reflect the total amount already paid to Mrs. Holliday, or exactly how many weeks remain unpaid. However, her petitions requested that the contract be reformed to show the correct commencement date of Friday, January 7, 1994, and that she be awarded $13,000, plus interestthe equivalent of $250 per week for 52 weeks. Judgment will be rendered accordingly.

DECREE
Mr. Holliday's motion to strike is denied. The judgment of the trial court is reversed. Judgment is rendered, reforming the agreement to show Friday, January 7, 1994, as the correct date for commencement of the lump-sum periodic alimony payments called for in the agreement. Because the full amount of those payments has not been paid, Mr. Holliday is ordered to pay Mrs. Holliday $13,000, plus interest. This amount represents 52 weekly payments of $250. Interest is due on the first payment from January 14, 1997, and on each of the 51 weekly payments thereafter from the date it was due, until paid. All costs of this appeal are assessed against Mr. Holliday.
MOTION TO STRIKE DENIED. REVERSED AND RENDERED.
CLAIBORNE, J. concurs with reasons.
GUIDRY, J. dissents and assigns reasons.
CLAIBORNE, J., concurring.
I respectfully concur with the findings of fact and the results.
I agree that parol evidence should have been admitted in light of the patent error. *434 I also agree that the evidence, both internal and by parol, indicates the proper year intended was nineteen ninety-four, and that there was no intent to make payments retroactive or to give credit for previous payments.
I do not agree with the statements regarding the applicability of the provisions of La. Civ.Code art. 6 to the interpretation of contracts. This holding is not necessary to the result reached in the majority opinion, and there is no jurisprudence in support thereof.
GUIDRY, J., dissents and assigns reasons.
GUIDRY, J., dissenting.
The majority opinion is an impermissible expansion of the law with respect to the use of parol evidence in reforming authentic acts.
Article 1848 of the Louisiana Civil Code states that "[t]estimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent ...." The vice of consent alleged in this matter is error. A plain reading of the applicable provisions of the Louisiana Civil Code requires the party seeking to reform an authentic act to clearly establish the cause of the obligation, without the benefit of parol evidence. Upon establishing the cause, the party may then take advantage of the exception found in La. C.C. art. 1848 and use parol evidence to prove mutual error concerning that cause in order to vitiate consent. The majority errs in allowing the appellant to use parol evidence to establish both the cause and the error concerning that cause. This is judicial intrusion upon the legislative prerogative.
Article 1949 states that "[e]rror vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party." (emphasis added).
The only thing that the appellant proved at trial without the use of parol evidence was that the date recited for the commencement of payments did not exist. Reading the authentic act only establishes that a certain number of payments (i.e., 208), at a certain amount (i.e., $250.00) would be made. The total amount of the obligation is never stated. In this case, the cause of the obligation is indeterminable without the use of parol evidence. However, the law only allows the use of parol evidence to prove a mutual error as to a cause determinable from the four corners of the authentic act. In order to get its desired result in this matter, the majority derogates from established law by using Article 1848 to put the cart before the horse.
The agreement in question is an authentic act, the sanctity and finality of which is protected by law, which gives meaning to the terms and conditions provided. The legislature has allowed for the use of parol evidence when there is mutual error concerning the cause of an obligation provided for in an authentic act. It has not authorized the use of parol evidence to establish a cause that is not determinable from the terms and conditions provided for by the parties in the authentic act. The majority errs in going beyond the scope of the plain language of the law to reach a result it deems to be in the interest of justice in this particular case. I believe that the interest of justice requires the exercise of judicial restraint in this matter. The judiciary should allow the legislature to expressly provide for the use of parol evidence in the determination of the cause of *435 an authentic act if the legislature desires to do so. Therefore, I respectfully dissent.
NOTES
[1] Judge William F. Kline, Jr., retired, and Judge Ian W. Claiborne, retired, are serving as judges pro tempore by special appointment of the Louisiana Supreme Court.
[2] The term, "lump-sum periodic alimony," is a term used by the parties in their agreement.
[3] At the time this case arose, the Louisiana Civil Code referred to spousal support in terms of alimony pendente lite and alimony after divorce. See former LSA-C.C. arts. 111 and 112.
[4] No appeal was taken with respect to the divorce judgment and its terms concerning the continued payment of alimony "pendente lite" following the divorce.
[5] A list of those checks in the record shows payments of $300 per week for 36 weeks, for a total of $10,800.
[6] The record is not clear concerning when this payment was made or the exact amount of this payment. At one point during Mrs. Holliday's proffered testimony, her attorney referred to an amount of $1700, and Mrs. Holliday acknowledged receipt of approximately that amount in the summer of 1999, several months before the trial. However, based on other evidence in the record concerning the amounts paid from January 1993 through January 1997, the "fill-in-the-gap" check would have had to be in the amount of $2200 in order to pay a total of $52,000 during this four-year period.
[7] The list of checks reveals 156 payments of $250 per week, for a total of $39,000.
[8] The factual summary to this point is based solely on the testimony and evidence admitted at trial.
[9] Mr. Holliday admitted that January 7, 1993, was not a Friday, but contended the use of this day and date in the agreement was not an error.
[10] Mr. Holliday's attorney objected to this evidence on the grounds that evidence of a compromise offer is inadmissible. See LSA-C.E. art. 408. While we would be inclined to agree, Mr. Holliday, who is an attorney and presumably is familiar with the rules of evidence, brought up this "counter letter" offer himself during his proffered testimony to support his position. At that time, he identified and discussed the terms of this same document. Therefore, we conclude that the earlier objection was withdrawn.
[11] We note that nowhere in the agreement is the amount of $52,000 stated. It simply calls for payment of $250 per week for 208 weeks.