938 So.2d 135 (2006)
Terry GIAUQUE, Melissa Bertrand and Darla R. Larson Individually and on Behalf of the Minor Child Allie Larson
v.
CLEAN HARBORS PLAQUEMINE, L.L.C. and Michael A. Sullivan.
No. 2005 CA 0799.
Court of Appeal of Louisiana, First Circuit.
June 9, 2006.
*137 Kenneth H. Hooks, III, Richard J. Dodson, Stephen M. Irving, Baton Rouge, for Plaintiffs-Appellees Terry Giauque, et al.
F. Barry Marionneaux, Plaquemine, Eric E. Jarrell, Len A. Brignac, New Orleans, for Defendants-Appellants Clean Harbors Plaquemine., L.L.C. and Michael A. Sullivan.
Before: KUHN, GUIDRY, and PETTIGREW, JJ.
PETTIGREW, J.
Plaintiffs in this environmental action are Louisiana citizens who challenge the validity of authorizations and orders issued by various environmental agencies with respect to the operation of a hazardous waste injection well situated near Plaquemine, in Iberville Parish, Louisiana. Following a hearing, the trial court granted petitioners' request for a preliminary injunction. From this judgment, defendants now appeal.

FACTS
Alleging numerous on-going violations of the Louisiana Environmental Quality Act ("LEQA")(La. R.S. 30:2001 et seq.), and specifically, La. R.S. 30:2202(C), plaintiffs, Terry Giauque, Melissa Bertrand, and Darla Larson, individually and on behalf of the minor child, Allie Larson (collectively, "plaintiffs") filed the instant litigation in the 18th Judicial District Court for the Parish of Iberville, State of Louisiana, on November 17, 2003, pursuant to the citizen suit provisions of the LEQA. See La. R.S. 30:2026. Plaintiffs identify themselves as citizens of the State of Louisiana who own property near the village of Bayou Sorrel, Louisiana, and/or use and enjoy the Bayou Sorrel area for recreational and aesthetic purposes in the vicinity of a Class I underground injection well. Named as defendants in this matter are the present owner/operator of the injection well site, Clean Harbors Plaquemine, L.L.C. ("Clean Harbors"), identified as a for-profit corporation authorized to do and doing business in Louisiana, and Michael A. Sullivan ("Mr. Sullivan"). Plaintiffs allege that Mr. Sullivan was the manager of the well site for various owners from 1978 until 2003, with the exception of intervals between late-1980 to 1983. Plaintiffs further allege that inasmuch as the violations took place in the village of Bayou Sorrel situated in Iberville Parish, subject-matter jurisdiction as well as venue are proper in the 18th Judicial District.
Pursuant to the allegations contained in the plaintiffs' petition, the hazardous waste injection well that forms the basis of this litigation was created in or about 1976, *138 when an abandoned oil and gas well located in Iberville Parish was converted for use as an injection well. Defendant Clean Harbors later acquired the well site from Safety-Kleen Corp. (formerly known as Rollins Environmental Services[1]) in 2002.
Plaintiffs allege that since 2002, Clean Harbors has violated, and continues to violate, La. R.S. 30:2202(C) by injecting hazardous waste into its underground well that plaintiffs' claim was determined by the Louisiana Department of Natural Resources, Division of State Lands ("LDNR") in November 1983, to be "located within the banks or boundaries of a body of surface water known as Lake Bayou Pigeon." Plaintiffs further allege that after acquiring the well site, defendants Clean Harbors and Mr. Sullivan made false and misleading statements to the Louisiana Department of Environmental Quality ("LDEQ") regarding the existence of five long-abandoned hazardous waste pits, failed to disclose to LDEQ that said pits were not properly closed, allowed discharges from the pits resulting in surface and ground water contamination, and failed to report evidence of ground water contamination, or that the abandoned pits had, since approximately 1983, ceased being within the area enclosed by the containment levee.

ACTION OF THE TRIAL COURT
On December 17, 2003, defendants removed this action to federal court asserting diversity of citizenship as a basis for the federal court's jurisdiction.[2] In removing the suit, defendants asserted that Mr. Sullivan had been fraudulently joined in the suit for the purpose of defeating diversity jurisdiction. In support of this assertion, defendants first argued that the plaintiffs' claim against Mr. Sullivan were prescribed because the allegations put forth against him by plaintiffs occurred more than a year prior to the institution of suit. Defendants further argued that the plaintiffs' claims could not be asserted against Mr. Sullivan in his individual capacity because the acts the plaintiffs' complained that Mr. Sullivan performed were in the capacity of an employee of the company and he was no longer employed by Clean Harbors. Plaintiffs thereafter filed a motion to remand the matter to state court that was granted by the federal court on April 8, 2004.
In the interim, defendants, on January 12, 2004, filed various declinatory exceptions raising objections of improper venue; lack of personal jurisdiction; and a lack of subject matter jurisdiction together with dilatory exceptions raising objections of prematurity; want of amicable demand; unauthorized use of summary proceedings; non-conformity of the petition; vagueness or ambiguity of the petition; lack of procedural capacity; and improper cumulation of actions, in the 18th Judicial District Court together with a memorandum in support thereof. Plaintiffs were thereafter directed to show cause why their claims should not be dismissed. After taking the matter under advisement, the trial court issued a ruling on August 10, 2004, wherein it adopted the reasons put forth by the plaintiffs and denied defendants' exceptions. A second judgment denying the exceptions was signed by the trial court on September 10, 2004.
Defendants subsequently applied for supervisory writs, and moved to stay proceedings *139 in the trial court pending a determination of their writ application. The motion to stay was denied by the trial court[3] and a panel of this court. This court later denied defendants' request for supervisory writs as later did the Louisiana Supreme Court.
On September 8, 2004, plaintiffs filed a petition seeking a preliminary injunction that would restrain Clean Harbors from continuing to dispose of hazardous waste at its injection well located at Bayou Sorrel, Louisiana, together with an assessment of civil penalties for noncompliance with La. R.S. 30:2202, all as provided for in La. R.S. 30:2026. The trial court subsequently held a two-day hearing on plaintiffs' request for a preliminary injunction that included testimony from both fact and expert witnesses. At the conclusion of the hearing, the court requested that the parties submit post-hearing briefs and took the matter under advisement.
On January 14, 2005, the trial court issued its "JUDGMENT OF COURT" that granted plaintiffs' request for a preliminary injunction and restrained Clean Harbors "from disposing of hazardous waste in the injection well . . . in violation of [La.] R.S. 30:2202(C)." Also on that date, the trial court issued its "RULING OF COURT" that granted plaintiffs' request for a preliminary injunction, and for the reasons stated in plaintiffs' "Memoranda [sic] in Support of said Petition" that the court expressly adopted as its own.
On January 18, 2005, defendants filed a motion to stay the effect of the preliminary injunction pending a determination of defendants' appeal. Following a telephone conference with counsel, the trial court issued its "COURTS' [sic] REASONS FOR RULING" wherein the court noted that the facility had been doing business for the past twenty-five years, and citing the irreparable harm Clean Harbors would sustain should the court's ruling be determined to be erroneous, granted defendants' motion for a stay of the preliminary injunction. The court further noted that said order did not stay any other proceedings and was not intended as a delay tactic. The decision by the trial court to stay the preliminary injunction is not an issue in this appeal. The primary issue put forth in the instant appeal is the trial court's decision to grant plaintiff's petition for a preliminary injunction against defendants for allegedly violating La. R.S. 30:2202(C).

ISSUES PRESENTED ON APPEAL
In connection with their appeal in this matter, defendants have set forth the following issues for consideration by this court:
1. Whether the district court lacked jurisdiction, and whether plaintiffs' lawsuit was filed in the wrong venue;
2. Whether the trial court violated the articles of the Louisiana Constitution regarding the separation of powers;
3. Whether the location and operation of defendants' injection well violates La. R.S. 30:2202(C);
4. Whether the wellhead or casing of defendants' injection well is located within a wetland in violation of La. R.S. 30:2202(C);
5. Whether the wellhead or casing of defendants' injection well is located within a surface water body in violation of La. R.S. 30:2202(C);
6. Whether La. R.S. 30:2202(C) applies to an injection well that may be *140 located within a former surface water body; and
7. Whether La. R.S. 30:2202(C) can be applied retroactively to defendants' injection well, which was in continuous operation for years prior to the effective date of the statute.

STANDARD OF REVIEW
Louisiana Code of Civil Procedure article 3612(B) provides that "[a]n appeal may be taken as a matter of right from an order or judgment relating to a preliminary or final injunction." A party aggrieved by a judgment either granting or denying a preliminary injunction is entitled to an appeal. Country Club of Louisiana Property Owners Association, Inc. v. Dornier, 96-0898, p. 2 n. 1 (La.App. 1 Cir. 2/14/97), 691 So.2d 142, 144 n. 1.
We are however mindful that appellate review of a trial court's issuance of a preliminary injunction is limited. The issuance of a preliminary injunction addresses itself to the sound discretion of the trial court and will not be disturbed on review unless a clear abuse of discretion has been shown. Lassalle v. Daniels, 96-0176, p. 5 (La.App. 1 Cir. 5/10/96), 673 So.2d 704, 708, writ denied, 96-1463 (La.9/20/96), 679 So.2d 435, cert. denied, 519 U.S. 1117, 117 S.Ct. 963, 136 L.Ed.2d 848 (1997).

LAW AND ANALYSIS
The writ of injunction, a harsh, drastic, and extraordinary remedy, should only issue in those instances where the moving party is threatened with irreparable loss or injury, and is without an adequate remedy at law. Conway v. Stratton, 434 So.2d 1197, 1198 (La.App. 1 Cir.1983); La.Code Civ. P. art. 3601. Irreparable injury has been interpreted to mean a loss that cannot be adequately compensated in money damages or measured by a pecuniary standard. Star Enter. v. State Through Dept. of Revenue and Taxation, 95-1980, 95-1981, 95-1982, p. 13 (La.App. 1 Cir. 6/28/96), 676 So.2d 827, 834, writ denied, 96-1983 (La.3/14/97), 689 So.2d 1383. A preliminary injunction is essentially an interlocutory order issued in summary proceedings incidental to the main demand for permanent injunctive relief. The courts have generally held that a preliminary injunction is designed to preserve the status quo pending a trial of the issues on the merits of the case. Silliman Private School Corp. v. Shareholder Group, XXXX-XXXX, pp. 5-6 (La.App. 1 Cir. 2/16/01), 789 So.2d 20, 23, writ denied, XXXX-XXXX (La.3/30/01), 788 So.2d 1194.
Generally, a party seeking the issuance of a preliminary injunction must show that he will suffer irreparable injury if the injunction does not issue and must show entitlement to the relief sought; this must be done by a prima facie showing that the party will prevail on the merits of the case. Jurisich v. Jenkins, 97-1870, p. 4 (La.App. 1 Cir. 9/25/98), 722 So.2d 1008, 1011, reversed on other grounds, 99-0076 (La.10/19/99), 749 So.2d 597. A showing of irreparable injury is not necessary when the act sought to be enjoined is unlawful, or a deprivation of a constitutional right is involved. Maynard Batture Venture v. Parish of Jefferson, 96-649, p. 4 (La.App. 5 Cir. 12/30/96), 694 So.2d 391, 392.
Louisiana Code of Civil Procedure article 3612 provides that while a party is not entitled to an appeal from an order relating to a temporary restraining order, an appeal may be taken as a matter of right from an order or judgment relating to a preliminary or final injunction. Nevertheless, an order or judgment issued in this manner shall not be suspended during the pendency of an appeal unless the court in its discretion orders a stay of further proceedings *141 until such time as the appeal has been decided. La.Code Civ. P. art. 3612.

DISCUSSION OF ISSUES PRESENTED ON APPEAL

Alleged Jurisdictional Defects of Petition
In their initial assignment of error, defendants direct this court's attention to what defendants claim are jurisdictional defects with respect to plaintiffs' lawsuit. More specifically, defendants assert that the trial court lacked jurisdiction to grant the preliminary injunction because plaintiffs (1) failed to pursue their administrative remedies, and (2) are engaged in an impermissible collateral attack on agency action in an improper venue.
Defendants contend that there is no evidence that plaintiffs attended hearings concerning the permitting of this well, submitted public comments, or directly engaged the Commissioner of Conservation with respect to the decision to authorize operation of the Clean Harbors well at its present location. In support of this contention, defendants cite Swanson v. Dept. of Public Safety and Corrections, XXXX-XXXX, pp. 3-4 (La.App. 1 Cir. 6/21/02), 837 So.2d 634, 635-37, for the proposition that a failure to exhaust administrative remedies deprives all courts of jurisdiction to review agency authorizations. Accordingly, defendants claim that the trial court lacked jurisdiction to grant plaintiffs' request for injunctive relief, and for this reason, argue that the trial court's judgment must be vacated.
Defendants further argue that inasmuch as it is undisputed that the injection well in question was first authorized in the 1970s, the present complaints by the plaintiffs in this matter constitute belated challenges to permits and orders issued by the LDEQ, LDNR, and the United States Environmental Protection Agency ("EPA"). Defendants point out that the Commissioner of Conservation of the LDNR has jurisdiction, pursuant to La. R.S. 30:4.1, over authorization of certain activities involving the permitting and location of deep injection wells. Defendants further rely on La. R.S. 30:12.A(1) for the proposition that plaintiffs must first exhaust their administrative remedies before bringing suit to challenge these orders and permits.
In support of this position, defendants cite and rely on Theriot v. Mermentau Resources, Inc., 385 So.2d 939, 942 (La. App. 3 Cir.), writ refused, 392 So.2d 689 (La.1980). Under the facts presented in Theriot, the plaintiffs therein filed suit seeking to enjoin the operation of a disposal well used to inject chemical waste products beneath the surface of their land. The trial court denied the defendant operator's declinatory exception of improper venue, and the court of appeal denied the defendant operator's application for writs of certiorari, prohibition, and mandamus. Writs were granted by the Louisiana Supreme Court, and on remand, the Third Circuit held that the suit was an attack on an order of the Commissioner of Conservation that authorized operation of the disposal well, and pursuant to statutes regulating disposal wells, the exclusive venue in any suit directly, indirectly, or collaterally attacking such an order is that provided by La. R.S. 30:12, not La. R.S. 30:1074 (the antecedent of the present day, La. R.S. 30:2026, the citizen suit provision relied upon by the plaintiffs in this matter).[4]
*142 In response to this assignment, plaintiffs assert that binding jurisprudence from this court mandates that defendants' appeal of the exceptions previously denied by the trial court is not timely. Plaintiffs cite Ciolino v. Castiglia, 446 So.2d 1366, 1369 (La.App. 1 Cir.1984), for the proposition that a trial court's ruling with respect to an exception raising an objection of res judicata could not be contested as part of an appeal from a judgment on a preliminary injunction absent a showing of irreparable harm with respect to the issue raised by the exception. Although a judgment on a preliminary injunction is an interlocutory judgment, it may be appealed pursuant to La.Code Civ. P. art. 3612. Relying on this court's holding in Ciolino, plaintiffs claim that La.Code Civ. P. art. 3612 does not authorize appellate review of an interlocutory judgment affecting exceptions with an appeal from a judgment on a preliminary injunction. Plaintiffs conclude by stating that because defendants have failed to allege or put forth any proof that the trial court's judgment overruling the exceptions will cause irreparable injury, the appeal of these rulings is improper at this time.
Based upon our review of this matter, we are of the opinion that appellate review of an interlocutory judgment overruling various exceptions raised by defendants is improper at this time. Additionally, it is evident to this court that plaintiffs in this matter have filed a citizen suit pursuant to the LEQA and the specific statutory authority of La. R.S. 30:2026. Plaintiffs are not appealing a final determination of state agency, but are instead attempting to enforce Louisiana's environmental laws and seek redress for alleged violations of said laws. For the foregoing reasons, we conclude that defendants' first assignment of error alleging jurisdictional defects with respect to plaintiffs' lawsuit is without merit.

Alleged Violation of the Separation of Powers Provision
In their second assignment of error, defendants question whether the trial court violated provisions of both the United States and Louisiana Constitutions with respect to the doctrine separating the respective powers of government. Defendants argue that the judiciary is not vested with original jurisdiction over claims such as those brought by plaintiffs.
In support of this contention, defendants cite Matter of American Waste & Pollution Control Co., 588 So.2d 367, 373 (La. 1991), for the proposition that LDEQ determinations with respect to permits are not "civil matters" within the meaning of Article V, § 16(A) of the Louisiana Constitution of 1974, which vests state district courts with original jurisdiction in all civil matters. Defendants argue that such matters are constitutionally delegated by the legislature to the LDEQ and fall within the ambit of the executive branch of state government. Judicial review of a decision by a state agency is an exercise of a court's appellate jurisdiction, which pursuant to La. R.S. 30:2024, is reserved to the 19th Judicial District Court.
Defendants contend that by choosing to exercise jurisdiction in this matter, the trial court has violated the separation of powers articles of both the United States and Louisiana Constitutions, and for this reason, its judgment must be vacated.
As we have previously determined, plaintiffs in this matter are not attempting to challenge or appeal from a final decision made by LDEQ, but are merely litigating perceived violations of Louisiana's environmental laws and regulations in the manner prescribed by state statute. We similarly find defendants' second assignment of error to be without merit.

*143 Trial Court's Interpretation of La. R.S. 30:2202(C)

In their remaining assignments of error, defendants question the trial court's determination that the location and operation of defendants' injection well violates La. R.S. 30:2202(C) based upon its finding that the wellhead or casing of defendants' injection well is located within a wetland. Defendants also question whether the wellhead or casing of their injection well is located within a surface water body or former surface water body in violation of La. R.S. 30:2202(C). Finally, defendants question whether La. R.S. 30:2202(C) is applicable to areas that were formerly characterized as surface water bodies, and whether said statute can be applied retroactively to defendants' injection well, which was in continuous operation for years prior to the effective date of the statute.
As we have previously noted, this appeal results from the trial court's decision to grant plaintiff's petition for a preliminary injunction against defendants for allegedly violating La. R.S. 30:2202(C). Although the subsequent decision by the trial court to stay the preliminary injunction is not an issue in this appeal, the trial court's written reasons for staying the injunction provide insight as to its reasons for granting the injunction. In its Reasons For Ruling with respect to Clean Harbors' motion for a stay of the preliminary injunction, the trial court noted that at the hearing on the preliminary injunction, the plaintiffs had proven, "by a preponderance of the evidence, a prima facia case that the well site owned by Clean Harbors is located within a wetlands, marsh, swamp, in violation of State law."
In connection with their appeal in this matter, defendants assert that the primary issue before this court is the proper interpretation and application to be given La. R.S. 30:2202(C) of the LEQA. We agree. In 1983, La. R.S. 30:2202(C) was amended to provide:
Notwithstanding any law, order, or regulation to the contrary, no person shall dispose of hazardous waste by injection into a Class I underground injection well when the well head or any portion of the casing is within the banks or boundaries of a lake, stream, or other surface water body within the jurisdiction of the state of Louisiana, whether man-made or occurring naturally, whether on a temporary or permanent basis.
La. R.S. 30:2202(C) [emphasis supplied].
Defendants argue that both the clear language of the foregoing statute, and its legislative history, show that the prohibition on injecting through a surface water body does not apply to the injection well at issue. Pursuant to defendants' interpretation of La. R.S. 30:2202(C), the statute is restricted in its application to present-day lakes, streams, or surface water bodies, and clearly does not apply to any past condition of the area where a well head is located and also does not apply to wetlands. Defendants point to the use of present tense language in the wording of the statute, and urge application of the well-settled rule that when a law is clear and does not lead to absurd consequences, the law shall be applied as written. See La. Civ.Code art. 9; La. R.S. 1:4. To extend application of the statute to areas that were once part of the banks or boundaries of a lake, stream, or other surface water body would, defendants argue, lead to absurd results. Defendants assert that much of the earth, including all of the present State of Louisiana, was at one point in the past, a surface water body.
Defendants further point to the legislative history of the statute and hearings by the House Natural Resources Committee that they assert clarify the intent of the statute was to prevent the injection of *144 hazardous waste directly into currently existing bodies of water. Louisiana Revised Statute 30:2202(C) was created by Acts 1983, No. 375, and introduced as House Bill No. 102. All versions of the bill are titled:
"Hazardous Waste Disposal  Prohibits disposal of hazardous waste in bodies of water." (Emphasis supplied)
Both sides rely on statements made during a hearing before the House Committee on Natural Resources relative to House Bill No. 102. It was this bill that ultimately amended Section 2202. In response to the trial court's inquiry regarding whether wetlands and swamps are to be considered "bodies of surface water" as contemplated by the statute, plaintiffs and defendants both quote statements made by State Representative James David Cain, the author of House Bill 102:
SPEAKER:
Well, does that include like marshes and all that?
MR. CAIN:
It should, yes, sir. I don't think that we should have an injection hazardous waste well in a  if it's a water body, yes. It does, yes, sir. I don't know of any site down there  and I would certainly hope no one would attempt to put one  but it would include water body if it's got surface water on top of it, or streams, the rivers, Mississippi River, wherever.

There's none there now. We've heard there may be applications in the future to put them in lakes so we're getting at the problem before there's really a problem, but it's coming down the pike, and I understand there are  I don't want to say it, but it's possible permits already  I mean, you know, applied-for permits on lakes and so forth. We want to stop it.
SPEAKER:
So any injection site could not have any surface water on their whole property?
MR. CAIN:
No, that's not what it says. It says the permit could not be allowed to go through water or surface on water. Certainly it could have it, . . . .
[Emphasis supplied].
While plaintiffs claim that it is clear from the foregoing discussion that the Legislature intended to include swamps and wetlands as "bodies of surface water" for the purpose of Section 2202, defendants assert that it is evident from the same colloquy that marshes would be included only where they also contain surface water bodies and only if the well head is actually situated in the surface water body.
In their brief to this court, defendants direct this court's attention to copies of previously-introduced photographs depicting the well site facility and the injection well itself, and further emphasize that the injection well at issue is located on dry, graveled land, surrounded on four sides by a rectangular-shaped ten and a half-foot, man-made levee or berm. It has not been inundated with water at any time since the passage of this legislation in 1983. Defendants add that the area immediately surrounding the bermed portion of the facility consists, on all four sides, of fenced and unfenced portions of lawn, maintained by regular mowing.
Defendants concede that to the north and northwest, beyond the levee and surrounding lawn, lay naturally-forested areas that likely contain some swamp and wetland areas. It is these naturally-forested areas situated outside of the levee, defendants claim, that their expert, Dr. Easterly, *145 referred to when he testified that the facility was in a wetlands "area." Defendants further claim it is uncontested by the parties that neither the well head nor the well casing is in contact with a water body or a wetland. Additionally, the parties do not dispute that the well at issue does not inject through a wetland.
In response, plaintiffs direct our attention to copies of previously-introduced photographs depicting the well site facility during a mean high water period and the area as it appeared in 1979 before the berm was relocated and its height increased. Plaintiffs ask this court to consider the appearance of the area outside of the protection levee during periods of high water. It is the contention of the plaintiffs that they have set forth a prima facie case that the area surrounding the facility has been characterized by experts from both sides as a "forested swamp," "slough" or "basin." Thus, when adjacent water courses overflow, the swamp and the low-lying areas surrounding the facility become inundated.
While acknowledging that Clean Harbors presently holds a permit to operate as a Class I hazardous waste injection well, plaintiffs contend that the provisions of La. R.S. 30:2202(C) take precedence over other provisions of the LEQA and prohibit the injection of waste classified as "hazardous" into what they contend once constituted the channel of an historic water body. Plaintiffs have sought to restrain Clean Harbors by means of a preliminary injunction from continuing to dispose of hazardous waste at its injection well located at Bayou Sorrel, Louisiana, together with an assessment of civil penalties for noncompliance with La. R.S. 30:2202, all as provided for in La. R.S. 30:2026.
In their injunction petition and incorporated memorandum, plaintiffs claim that the language of La. R.S. 30:2202(C) is extremely clear and that in instances where the well head or any part of the casing is located within the "banks or boundaries" of a "stream or other surface water body. . . on a temporary or permanent basis" the well cannot lawfully dispose of hazardous waste. Citing Civil Code article 456, which defines the "bank of a navigable river," the plaintiffs attempt to "bootstrap" Civil Code article 456 to La. R.S. 30:2202(C) in support of their contention that the well head at issue, or any part of its casing, cannot be located within the "ordinary low and the ordinary high stage of the water."
Plaintiffs acknowledge in their petition for injunction, that they hired Dr. George Castille, a professional geographer, "to investigate the location of the injection well for the purpose of determining whether or not the well is within the banks or boundary of a lake or stream." Relying upon historical photographic evidence, government documents, vegetation patterns and data produced by aerial radar, plaintiffs claim that Dr. Castille proved conclusively that the Clean Harbors well site is surrounded by the boundaries of an historic body of water identified on early surveys as Lake Bayou Pigeon.
Plaintiffs contend that "[b]y situating the present Clean Harbors facility on this old survey, it is readily apparent that the location of the Clean Harbors facility is identified as open water in this 1832 survey. Specifically, the existing well head and casing would be in an area of open water within the historic body of water identified as Lake Bayou Pigeon."
Following a two-day hearing, the trial court issued its "JUDGMENT OF THE COURT" on January 14, 2005. This ruling granted plaintiffs' request for a preliminary injunction and restrained Clean Harbors "from disposing of hazardous waste in the injection well . . . in violation of La. *146 R.S. 30:2202(C)." Also on that date, the trial court issued its "RULING OF THE COURT" that granted plaintiffs' request for a preliminary injunction for the reasons stated in plaintiffs' "Memoranda in Support of said Petition" [sic], that the court expressly adopted as its own.
Several days later, defendants filed a motion to stay the effect of the preliminary injunction pending a determination of defendants' appeal. In response, the trial court held a telephone conference with counsel for the parties relative to the stay request wherein the trial court attempted to clarify its previous ruling that granted plaintiffs' request for a preliminary injunction. The court made it clear that its earlier ruling on the preliminary injunction involved a strictly technical application of the statute and the legislative intent as to whether the site was considered wetlands or marshes. Admitting that it was well aware that the well site is now elevated and surrounded on four sides by a rectangular-shaped ten and a half-foot, man-made levee or berm, the court concluded that prior to its improvement, the area surrounding the well site was, "wetlands, marshes and swamps." Based upon this finding, the court concluded that this finding constituted a violation of La. R.S. 30:2202(C).
We must disagree. Based upon our reading of La. R.S. 30:2202(C), it is evident to this court that under the terms of the statute, the disposal of hazardous waste into underground injection wells where the well head or any portion of the casing is within a body of water is clearly prohibited. Thus, a hazardous waste injection well could not be situated within a present-day river, lake, or stream. More troubling are swamps, marshes, and other low-lying areas typically described as "wetlands."
In the opinion of this court, simply categorizing an area as "wetland" cannot end the inquiry. We believe the question must be whether a proposed site is covered by surface water a majority of the time. While an area's historic designation as a water body may account for its low-lying condition today, in terms of statutory application, historic designation is not determinative of the issue. The statute's application must be restricted to present-day conditions.
It is our belief that a swamp or marsh covered by water a majority of the year would be considered a surface water body and precluded as a site for a hazardous waste injection well under the terms of the statute. Similarly, saturated, low-lying areas typically described as "wetlands" and subject to regular inundation by floodwaters would also be precluded as a site for a hazardous waste injection well. However, low-lying wetland areas that are dry for most of the year, and subject only to occasional flood waters, which can be protected by an encompassing levee or berm, as is the case with the Clean Harbors facility at issue in this case, are not precluded as a site for a hazardous waste injection well.
We conclude that the trial court erred in its application of La. R.S. 30:2202(C) and its issuance of the preliminary injunction. We pretermit discussion of all remaining issues.

CONCLUSION
For the reasons set forth above, the trial court's issuance of a preliminary injunction restraining defendant, Clean Harbors, from disposing of hazardous waste in its injection well at Bayou Sorrel, Iberville Parish, Louisiana, is hereby reversed. All costs associated with this appeal shall be assessed against plaintiffs, Terry Giauque, Melissa Bertrand, and Darla Larson, individually *147 and on behalf of the minor child, Allie Larson.
REVERSED.
KUHN, J., concurs.
NOTES
[1] Plaintiffs allege that Rollins is presently in bankruptcy, and consequently, is not a party to this proceeding.
[2] Giauque et al v. Clean Harbors Plaquemine, L.L.C., Civil action 03-958-D-M2 (U.S. Dist Ct. M. Dist. La.)
[3] The order denying the stay request reflects that it was signed by the court on August 15, 2004. Inasmuch as a hearing on defendants' motion for a stay request was held on Monday, August 16, 2004, the August 15th date appears to be incorrect.
[4] Pursuant to House Concurrent Resolution No. 247 of the 1987 Regular Session, the subject matter of the sections and Parts of Chapter 11 were reorganized and redesignated.