PARRO, J.
|2The State of Louisiana, through the Department of Public Safety and Corrections, Office of State Police (the State Police), and the State of Louisiana, through the Louisiana Gaming Control Board (the Board),[1] invoked the appellate jurisdiction of the Louisiana Supreme Court concerning a district court judgment that granted a preliminary injunction in favor of the plaintiffs, Farmer’s Seafood Company, Inc. (Farmer’s Seafood) and its owners, on the grounds that LSA-R.S 27:28(H)(1) and LAC 42:XIII.2901(B)(1) and (B)(2)(a) were unconstitutional. Because the district court’s declaration of unconstitutionality went beyond the plaintiffs’ request for in-junctive relief, the supreme court vacated and set aside the judgment’s declaration of unconstitutionality and transferred the appeal to this court for expedited review on the merits of the judgment granting the preliminary injunction. See Farmer’s Seafood Co., Inc. v. State ex rel. Dep’t of Pub. Safety, 10-1534 (La.9/3/10), 44 So.3d 676 (per curiam). For the following reasons, we affirm the judgment.
FACTUAL AND PROCEDURAL BACKGROUND
Farmer’s Seafood is a family-owned Shreveport seafood company that has been in business since 1918; its current owners are Aex Mijalis, John Cosse, and Johnny Mijalis. The company has been supplying seafood to Louisiana riverboat casinos since 1994 under a non-gaming supplier’s permit. Beginning in 1997, Farmer’s Seafood employed Gus Mijalis, a family member who had been released from prison that year after serving a federal felony sentence. Farmer’s Seafood applied for renewal of its permit in 2002. The State Police informed Gus Mijalis in a 2004 letter that he was required to be “suitable,” as defined by certain provisions of the Louisiana Gaming Control Law,[2] in order to be employed by Farmer’s Seafood. Since ten years had not elapsed since the completion of his felony sentence, he could not meet that requirement; therefore, Farmer’s Seafood terminated Gus Mijalis’s employment at that [ atime. In September 2006, the Board issued a notice of recommendation of denial of the renewal application, based on the fact that Farmer’s Seafood had a “prohibited association” with Gus Mijalis, having employed him from 1997 through 2004 in a position that the Board claimed gave him “significant influence” in managerial and financial aspects of the company’s business. The Board proposed to deny renewal of Farmer’s Seafood’s permit and to find that all of the individual owners were unsuitable for doing business with the gaming industry. Farmer’s Seafood and its owners (hereafter collectively, Farmer’s) timely requested an administrative hearing concerning the matter, which eventually was set for September 16, 2009.
However, on September 1, 2009, Farmer’s filed a petition for injunctive relief, seeking to prohibit the Board from conducting the administrative proceeding on the grounds that a portion of the statute relied on' by the Board, LSA-R.S. 27:28(H)(1), was unconstitutional. Farmer’s claimed that the statute was vague and impermissibly delegated legislative authority over gaming to an administrative agency, thereby violating the separation of *1266 powers between the executive and legislative branches of government, as well as a constitutional provision granting the legislature exclusive authority over gaming. In a supplemental and amending petition, Farmer’s also alleged the unconstitutionality of LAC 42:XIII.2901(B)(1) and (B)(2)(a) (Section 2901) on the same grounds. After a hearing, the district court found that portions of the statute and Section 2901 were unconstitutional and granted Farmer’s a preliminary injunction prohibiting the Board’s actions. On direct appeal to the supreme court, the declarations of unconstitutionality in the district court judgment were vacated and set aside, and the matter was transferred to this court for consideration of the merits of Farmer’s request for a preliminary injunction.
DISCUSSION
As a preliminary matter, we address the State’s procedural argument in its first assignment of error that a district court may not enjoin an administrative proceeding when the injunctive relief is based on the alleged unconstitutionality of statutes and 1 regulations. The State contends that the only proper mechanism for a constitutional challenge is through a petition for declaratory judgment, which is an ordinary proceeding, and cannot be made in a suit for injunctive relief, which employs a summary proceeding to try the request for a preliminary injunction.
We disagree with this argument. A preliminary injunction is essentially an interlocutory order issued in summary proceedings incidental to the main demand for permanent injunctive relief. The courts have generally held that a preliminary injunction is designed to preserve the status quo pending a trial of the issues on the merits of the case. Giauque v. Clean Harbors Plaquemine, L.L.C., 05-0799 (La. App. 1st Cir.6/9/06), 938 So.2d 135, 140, writs denied, 06-1720 and 06-1818 (La.1/12/07), 948 So.2d 150 and 151. Although the plaintiff is only required to make a prima facie showing at the hearing regarding a preliminary injunction, the issuance of a permanent injunction takes place only after a trial on the merits, in which the burden of proof must be carried by a preponderance of the evidence, rather than a prima facie showing. See Vartech Systems, Inc. v. Hayden, 05-2499 (La.App. 1st Cir.12/20/06), 951 So.2d 247, 255; City of Baton Rouge/Parish of East Baton Rouge v. 200 Government Street, LLC, 08-0510 (La.App. 1st Cir.9/23/08), 995 So.2d 32, 36, writ denied, 08-2554 (La.1/9/09), 998 So.2d 726; Charter School of Pine Grove, Inc. v. St. Helena Parish Sch. Bd., 07-2238 (La.App. 1st Cir.2/19/09), 9 So.3d 209, 218. Thus, even though the summary proceedings for the preliminary injunction may touch upon or tentatively decide issues on the merits, ultimately the constitutionality issue will be decided in an ordinary proceeding at a full trial on the merits. Ouachita Parish Police Jury v. American Waste and Pollution Control Co., 606 So.2d 1341, 1346 (La.App. 2nd Cir.), writ denied, 609 So.2d 234 (La.1992), cert. denied, 508 U.S. 909, 113 S.Ct. 2339, 124 L.Ed.2d 249 (1993). This court has determined that a district court has subject matter jurisdiction and may grant injunctive relief prohibiting enforcement of a regulation by an administrative agency, based on the court’s preliminary finding that the regulation was unconstitutional. See Piazza’s Seafood World, LLC v. Odom, 07-2191 (La.App. 1st Cir.12/23/08),s 6 So.3d 820, 825. Accordingly, we see no legal obstacle barring Farmer’s pursuit of its claims in this case via a petition for injunctive relief.
An additional preliminary matter is the admissibility of the affidavit of Alex S. Mijalis, which was submitted by Farmer’s in support of its request for injunctive relief. The State has assigned as error *1267 the court’s admission of this document over its objection, on the grounds that it is inadmissible hearsay. However, LSA-C.C.P. art. 3609 allows the application for a preliminary injunction to be heard upon the verified pleadings or supporting affidavits. If the application is to be heard upon affidavits, the court must so order in writing, and a copy of the order is to be served upon the defendant at the time the notice of hearing is served. The record shows that when Farmer’s filed its supplemental and amending petition, the attached order, which was signed by the court, included the statement that in accordance with Article 3609, the application would be heard upon the verified pleadings and supporting affidavits. The article further requires that any such affidavits are to be delivered to the adverse party at least twenty-four hours before the hearing. The record shows that the affidavit was not provided to opposing counsel within this time period. However, the court continued the hearing on the preliminary injunction until the following day, in order to provide the court and opposing counsel the opportunity to review the documents submitted by Farmer’s, thus bringing the delivery of the affidavit within the statutorily-prescribed time limit. Therefore, the court did not err in admitting the affidavit submitted by Farmer’s.
The only issue to be considered at a hearing on a preliminary injunction is whether the moving party has met its burden of proving that it will suffer irreparable injury, loss, or damage if the injunction is not issued, that it is entitled to the relief sought as a matter of law, and that it will likely prevail on the merits of the case. Farmer’s, 44 So.3d at 678; see LSA-C.C.P. art. 3601. However, a showing of irreparable injury is not necessary when the act sought to be enjoined is unlawful or when a deprivation of a constitutional right is involved. Giauque, 938 So.2d at 140. The party challenging the statute bears the burden of proving it is unconstitutional. | fiCity of New Orleans v. La. Assessors’ Retirement & Relief Fund, 05-2548 (La.10/1/07), 986 So.2d 1, 12. To successfully challenge a legislative act as unconstitutional on its face, the challenger must establish that no circumstances exist under which the act would be valid. Id. at 19.
An appeal may be taken as a matter of right from an order or judgment relating to a preliminary or final injunction. LSA-C.C.P. art. 3612. Appellate review of a trial court’s issuance of a preliminary injunction is limited. The issuance of a preliminary injunction addresses itself to the sound discretion of the trial court and will not be disturbed on review unless a clear abuse of discretion has been shown. Piazza’s, 6 So.3d at 826; Giauque, 938 So.2d at 140.
The alleged unconstitutionality of certain statutory and regulatory provisions is the sole basis for Farmer’s claims. Although the supreme court pointed out that the district court exceeded its authority in declaring the unconstitutionality of those provisions in the context of a preliminary injunction, implicit in the district court’s judgment is its finding that Farmer’s presented prima facie evidence sufficient to show it would be likely to prevail on the merits at the hearing for a permanent injunction. Therefore, our review of the judgment will address whether such a finding of the district court was a clear abuse of discretion.
The “suitability” requirement for persons and entities involved in the gaming industry is set out in LSA-R.S. 27:28(A), which states, in pertinent part, that “[n]o person shall be eligible to obtain a license or permit ... unless the applicant has demonstrated by clear and convincing evidence to the board or division, where applicable, that he is suitable.” The word “suitable” is defined in paragraphs (1) *1268 through (4) of Subsection A of this statute, and is further limited by Subsection B, which sets out a number of specific criteria that automatically disqualify an applicant. One of those disqualifying criteria is the conviction of a felony by any person required to be suitable. See LSA-R.S. 27:28(B)(l)(a). It is undisputed that Gus Mijalis was convicted of a federal felony, and thus, was disqualified from participation in the gaming industry |7as a licensee or permittee.[3]
However, there is nothing in the statutory scheme set out in Title 27 that requires an ordinary employee of a non-gaming supplier permit tee to be “suitable,” or prohibits the employment of such an individual by a permittee, unless that person falls within the situation described in LSA-R.S. 27:28(H)(1). That statutory provision states, in pertinent part:
Any person who has the ability, in the opinion of the board, to exercise a significant influence over a ... per-mittee ... or other person required to be found suitable pursuant to the provisions of this Title, shall meet all suitability requirements and qualifications pursuant to the provisions of this Title. (Emphasis added).
Farmer’s challenges the constitutionality of this provision, which underlies the Board’s proposed refusal to renew Farmer’s non-gaming supplier’s permit.
The Board’s intended action is also based on Section 2901, which was passed by the Board at a December 19, 2000 meeting and states:
(B)(1) No licensee or permittee shall engage in unsuitable conduct or practices or shall employ or have a business association with any person, natural or juridical, which engages in unsuitable conduct or practices.
(B)(2) For purposes of this Section, unsuitable conduct or practices shall include, but not be limited to, the following:
(a) employment of, in a managerial or other significant capacity as determined by the division or board, business association with, or participation in any enterprise or business with, a person convicted of a felony or declared unsuitable by the division or board.
The State Police investigation indicated that Gus Mijalis was performing duties at Farmer’s that the Board apparently believed gave him the ability to exercise a significant influence over Farmer’s. Therefore, the Board required him to meet all suitability requirements, pursuant to LSA-R.S. 27:28(H)(1), which he could not do. Also, since Farmer’s had employed and had been involved in a prohibited business association with Gus Mijalis, a convicted felon, the company was in violation of Section 2901. For these reasons, the Board intended to disqualify Farmer’s and its owners as |sunsuitable and to revoke Farmer’s permit, pursuant to LSA-R.S. 27:28(1). According to LSA-R.S. 27:28(E), “[a]y person whose license or permit has been revoked or who has been found unsuitable ... is not eligible to obtain any license or permit pursuant to the provisions of this Title for a period of five years from the date the revocation or finding of unsuitability becomes final.” The Board’s proposed action would preclude Farmer’s from obtaining any license or permit to do business with the casinos for five years.
*1269 Farmer’s contends that portions of LSA-R.S. 27:28(H)(1) are unconstitutional violations of the separation of powers principle. Farmer’s argues that the statutory provision impermissibly delegates legislative authority to administrative agencies, giving the agencies unfettered discretion to determine which persons must be “suitable” under its provisions and to take action based solely on the agencies’ opinion, without any legislative guidance as to how that opinion is to be formed or what constitutes “significant influence.” Further, Farmer’s claims the challenged portions of Section 2901 exceed the statutory authority granted to the State by the legislature, because they provide a blanket prohibition against employment of, business association with, or participation in a business or enterprise with a person who has been convicted of a felony, despite the fact that the applicable gaming statutes do not provide such a blanket prohibition. In addition, Section 2901 prohibits employment of a convicted felon in any “other significant capacity,” as determined by the division or Board, which differs from the statutory requirement in LSA-R.S. 27:28(H)(1) of suitability for anyone who, in the opinion of the Board, has “significant influence” on a permittee. Therefore, Farmer’s contends that Section 2901 exceeds and is inconsistent with the authority granted to the Board by the gaming statutes.
Article III, Section 1(A) of the Louisiana Constitution provides that the legislative power of the state is vested in a legislature, consisting of a Senate and a House of Representatives. Article XII, Section 6(C) is very specific in assigning to the legislature the sole authority to define and regulate the gaming industry. Article II sets out in Section 1 the three separate branches of government — legislative, executive, and ^judicial — and provides in Section 2 that no one of these branches shall exercise power belonging to either of the others. Accordingly, although the legislature may delegate its ministerial or administrative authority to an agency of the executive branch, it may not delegate its legislative authority. See State v. Alfonso, 753 So.2d 156, 160 (La.1999). The Louisiana Supreme Court has devised a three-prong test to determine whether a particular statute unconstitutionally violates the separation of powers principle by delegating legislative authority to an administrative agency. Under this test, a delegation of authority to an administrative agency is constitutionally valid if the enabling statute (1) contains a clear expression of legislative policy; (2) prescribes sufficient standards to guide the agency in the execution of that policy; and (3) is accompanied by adequate procedural safeguards to protect against abuse of discretion by the agency. State v. All Pro Paint and Body Shop, Inc., 93-1316 (La.7/5/94), 639 So.2d 707, 712.
Examining the first prong of this test, the legislature set out in LSA-R.S. 27:2 that it is the public policy of this state that all persons and activities related to gaming “shall be strictly regulated.” By enactment of LSA-R.S. 27:15, the legislature delegated to the Board the regulation of “all gaming activities and operations in the state,” granting it “all regulatory authority, control, and jurisdiction, including investigation, licensing, and enforcement, and all power incidental or necessary to such regulatory authority, control, and jurisdiction over all aspects of gaming activities and operations.” LSA-R.S. 27:15(A) and (B)(1). In LSA-R.S. 27:15(B)(8), the legislature authorized the Board to “[ajdopt such policies and rules as are necessary to the efficient, efficacious, and thorough conduct of the business of regulating and controlling the gaming operations and activities under its jurisdiction,” with such rules to be adopted pursuant to the Administrative Procedure Act and subject to legislative oversight and review. The legislature also gave the Board au *1270 thority to promulgate all rules and regulations necessary to carry out the provisions of Title 27. LSA-R.S. 27:24(A). These statutes provide a clear expression of legislative policy to strictly regulate the gaming industry 110and to delegate an expansive range of regulatory and enforcement authority to the Board. Although the specific statute at issue does not include a policy statement, it seems consistent with the stated policies and regulatory scheme running throughout the Louisiana Gaming Control Law. Thus, the first prong of the test for constitutional validity appears to have been met.
Farmer’s arguments suggest that the major weakness of the statute is in satisfying the second prong of the test, namely, that the enabling statutes prescribe sufficient standards to guide the agency in the execution of the legislative policy. If the standards do not provide sufficient guidance, the agency may be exercising legislative power, rather than just administrative, regulatory, or ministerial authority, in making its decisions. The portion of the statute at issue, LSA-R.S. 27:28(H)(1), adds a category of persons to the list of those who must be found to be “suitable” in order to conduct certain activities with the gaming industry. The legislature has provided clear guidance concerning some factors pertaining to suitability by the definitions in LSA-R.S. 27:28(A)(1) through (4), and by the disqualifying criteria in LSA-R.S. 27:28(B). However, the wording of LSA-R.S. 27:28(H)(1) allows the Board to decide that a person must meet all suitability requirements and qualifications of the gaming laws on the basis of the Board’s opinion that the person has the ability to exercise a significant influence over a permit tee or other person required to be suitable. Note that the statute does not require a finding that the person actually does exercise significant influence, or even that the person appears to exercise significant influence. Nor does it require a finding that the person is actually able to exercise such influence; the mere opinion that such ability exists would satisfy the statutory language. The wording of the statute essentially requires no underlying factual finding for the Board’s decision to require a person to meet the suitability requirements, thereby making such a decision virtually unreviewable on appeal. Based on a literal reading of the statute, only the opinion of the Board is necessary to justify its decision. Furthermore, in contrast to the guidance provided for a “suitability” determination, the statutory scheme Indoes not define what constitutes “significant influence” or provide any guidance concerning how that determination might be made or which factors would demonstrate an ability to exercise significant influence over a permit tee or other person required to be suitable.
The State argues that the use of the word “opinion” is simply an indication that the legislature has granted the Board discretion in reaching this determination, as it has in many other areas of the statutory scheme. As examples, it cites the factors of LSA-R.S. 27:28(A)(1), which states that “suitable” means a person of good character, honesty, and integrity — all of which require a discretionary evaluation and opinion. We note that the challenged portion of the statute has no similar factors. If LSA-R.S. 27:28(H)(1) had similarly listed some examples or criteria for consideration in determining the meaning of “significant influence,” these inclusions might well satisfy the requirement that “sufficient standards” be provided by the legislature. However, the challenged portion of the statute has no such guidance.[4]
*1271 Attached to the affidavit of Alex Mijalis were excerpts from the depositions of various employees of the State Police, which were taken in preparation for the administrative hearing. Major Michael Noel, the witness designated to testify on behalf of the State Police, stated that other than Farmer’s employment of and association with Gus Mijalis, he was not aware of any other problems with Farmer’s that might make it or its owners “unsuitable” or preclude the renewal of its permit. He also stated that neither the regulations nor the statutes defined a “prohibited association” or specified the factors to be used in determining whether such an association existed. Similarly, with reference to the term “significant influence,” Major Noel stated that there was no definition of this term used by the State Police, and there were no. written or unwritten criteria that were used to determine whether a person has or can exercise significant 1 iainfluence. Trooper Charles Partin, who conducted the investigation of Farmer’s, confirmed his understanding that there was no statute providing a blanket prohibition against a licensee or permit tee hiring a convicted felon. He said there was no guidance given to licensees or permittees about the criteria they might use to determine whether someone they employed or associated with had significant influence or the ability to exercise significant influence over their operations. Trooper Partin’s investigation did not find anything to suggest Farmer’s was engaged in any unlawful activity or association with organized crime. Ms. Janice Adolph, an audit supervisor with the State Police, testified concerning her audit of Farmer’s, which included in its scope an investigation into whether Gus Mijalis exercised significant influence over the company. When she prepared the audit report, she had no written definition of the term “significant influence,” and could not recall any oral guidance concerning that term. She had never been provided with criteria or factors to apply in making the “significant influence” determination and did not know of any such guidance anywhere within the regulations, statutes, or internal State Police handbooks. Ms. Adolph found no evidence that Farmer’s had been keeping inaccurate records, that it was involved in criminal activity, that it was associated with organized crime, or that it had misrepresented anything during the audit. She also found nothing to suggest that the owners of Farmer’s were not persons of good character, honesty, and integrity. Other than the association with Gus Mijalis, she found no evidence of activities that would make them unsuitable under the Louisiana Gaming Control Law.
The sworn testimony of the State Police deponents supports Farmer’s claim that neither the legislature, by statute, nor the Board, by regulation, provided guidance to the State Police for its investigations into whether a prohibited association with a person existed or whether a person had the ability to exert significant influence over a permittee. These investigations ultimately form the basis of the Board’s opinion, yet neither the State Police nor the Board have a legislatively-provided definition of factors or criteria to consider when determining if a person meets the requirements of the |lsstatute and must, therefore, meet the suitability standards. The State produced no evidence to the contrary. Therefore, based on the word *1272 ing of the statute itself and this supporting evidence, the district court might have concluded that Farmer’s made a prima facie showing that the second prong of the constitutional validity test regarding the separation of powers principle was not met, in that the statutory scheme did not prescribe sufficient standards to guide the Board in the execution of the legislative policy, thereby allowing it to exercise legislative authority on this issue. Such a conclusion would not be an abuse of the district court’s discretion.
Having determined that a finding of unconstitutionality based on the second prong of the jurisprudential test would not be an abuse of discretion, it would serve no purpose for this court to consider the third prong of that test. Since the issue of whether the statute satisfies the third prong of the test is mooted by our decision concerning the second prong of the test, any such. discussion would constitute an advisory opinion, which this court may not render. See Louisiana State Bd. of Nursing v. Gautreaux, 09-1758 (La.App. 1st Cir.6/11/10), 39 So.3d 806, 811; Howard v. Administrators of Tulane Educ. Fund, 07-2224 (La.7/1/08), 986 So.2d 47, 54. Therefore, we pretermit discussion of this issue.
We turn our attention to consideration of whether Farmer’s made a prima facie showing that Section 2901 is unconstitutional because it exceeds the legislature’s grant of authority to the Board and is inconsistent with the statutory scheme it purports to enforce. We have previously noted that the Louisiana Gaming Control Law does not contain a blanket prohibition against employment of, business association with, or participation in a business or enterprise with a person who has been convicted of a felony. In fact, there are “cleansing periods” for the conviction of various offenses provided in LSA-R.S. 27:28(C)(l)(a) and (b), and if these cleansing periods are satisfied, such convictions do not automatically disqualify the person from being found 114“suitable” to participate in the gaming industry.[5] Finally, in LSA-R.S. 27:28(C)(3), the legislature has granted the Board authority to consider the seriousness and circumstances of any offense, arrest, or conviction in determining suitability. However, this grant falls far short of authorizing the Board to disqualify licensees or permittees for “unsuitable conduct” under Section 2901, when such “unsuitable conduct” includes employing in a managerial or other significant capacity, business association with, or participation in any enterprise or business with a person convicted of a felony or declared unsuitable by the Board. Although the legislature has allowed the Board to consider the seriousness and circumstances of any crime or arrest in making its suitability determinations, it has not authorized the Board to create a new definition to prohibit conduct that is explicitly allowed by the Louisiana Gaming Control Law, ie., the business association with or participation in any enterprise or business with a person convicted of a felony. The regulations promulgated by an agency may not exceed the authorization delegated by the legislature. Piazza’s, 6 So.3d at 828. The enactment of Section 2901 could be viewed as legislation by the Board on this issue, since the regulation apparently exceeds and is inconsistent with the legislature’s authorization, thereby violating the separation of powers.
*1273 Based on this simple comparison of the statutory grant of authority to the Board with the language of the regulation passed by the Board in Section 2901, we conclude that the district court could have found that Farmer’s established a prima facie case that Section 2901 is an unconstitutional violation of the separation of powers principle, because it exceeds and is inconsistent with the legislature’s grant of authority to the Board. Such a determination by the district court would not be an abuse of its discretion.
Finally, we address the State’s argument that the district court erred in enjoining the entire administrative proceeding, when the State had a number of grounds for its |1sproposed action against Farmer’s, and the court’s declaration of unconstitutionality addressed only one of those grounds, leaving the others extant. We have reviewed the statutes and regulations set out in the Board’s notice of recommendation of denial of renewal application that was sent to Farmer’s. Ultimately, the factual allegations set out in that notice are all related to Farmer’s employment of Gus Mijalis and the duties he performed for Farmer’s. Therefore, we find no error or abuse of discretion in the district court’s enjoining of the entire administrative proceeding until such time as the merits of the case can be determined at trial.
CONCLUSION
For the above reasons, we affirm the judgment of the district court granting a preliminary injunction enjoining and restraining the Board and the State Police from proceeding with the administrative actions proposed against Farmer’s and its owners until a final resolution'of the case. We remand this case to the district court for further proceedings consistent with this opinion, to be conducted as expeditiously as possible. Costs of this appeal in the amount of $2,223 are assessed against the Louisiana Gaming Control Board and the Department of Public Safety and Corrections, Office of State Police.
AFFIRMED AND REMANDED.

. Throughout this opinion, we will refer to the defendants, collectively, as "the State.”

. The Louisiana Gaming Control Law is set out in Title 27 of the Louisiana Revised Statutes.

. We note that if ten or more years has elapsed between the date of application and the successful completion or service of any felony sentence, the person is no longer automatically disqualified. See LSA-R.S. 27:28(C)(l)(a). Gus Mijalis completed his criminal sentence in April 1999.

. The State also argues that the language of the statute has already survived a constitutional challenge in Payne v. Fontenot, 925 F.Supp. 414 (M.D.La.1995). Indeed, the lan *1271 guage, which at that time was contained in LSA-R.S. 33:4862.10(D), was found to be constitutional. However, the issues before the court were whether the provision violated the freedom of association guaranteed by the First Amendment, the right to privacy under the Fourteenth Amendment, or the due process clause of the Fourteenth Amendment to the United States Constitution. The possible violation of the separation of powers principle was not at issue and was not considered by the court.

. The only exception is that these "cleansing periods” are not available to persons convicted of crimes of violence. See LSA-R.S. 27:28(C)(2). Although not applicable to this case, because Gus Mijalis was not convicted of a crime of violence, this provision demonstrates that the legislature could choose to and did carve out exceptions to the "cleansing periods.”