672 So.2d 1133 (1996)
PADDISON BUILDERS, INC.
v.
Debra Britton TURNCLIFF and Edward W. Turncliff.
No. CA 95 1753.
Court of Appeal of Louisiana, First Circuit.
April 4, 1996.
Rehearing Denied May 23, 1996.
*1134 Robert L. Atkinson, Baton Rouge, for Defendants/Appellants Debra Britton and Edward W. Turncliff.
Howard R. Fussell, Covington, for Plaintiff/Appellee Paddison Builders, Inc.
Before LEBLANC, WHIPPLE and FOGG, JJ.
WHIPPLE, Judge.
This case is before us on appeal from a judgment in favor of plaintiff, Paddison Builders, Inc. (Paddison), and against defendants, Debra Britton Turncliff and Edward W. Turncliff, dismissing defendants' petition for a preliminary injunction wherein they sought to enjoin the sale of certain property. For the following reasons, we reverse and remand.

FACTS AND PROCEDURAL HISTORY
The record reveals that on December 16, 1994, defendants executed a promissory note payable to Paddison in the principal amount of $150,000.00. The note was to be paid in thirty-five monthly installments. The first installment was due on January 16, 1995, in the amount of $3,113.75 and, the final installment was due on December 16, 1997. This promissory note was paraphed for identification with an Act of Mortgage, also dated December 16, 1994. By this act, defendants mortgaged their property, located at # 9 Magnolia Gardens in Covington, Louisiana, "to secure the full and punctual payment of the said note according to its terms and to secure the faithful performance of all of the *1135 obligations contained [in the act of mortgage]...."
On June 7, 1995, Paddison filed a petition for executory process alleging that defendants were in default because they had "failed and refused to obtain sufficient insurance to protect [Paddison] as the holder of the note despite repeated demands by [Paddison] to do so." Thus, according to Paddison, the remaining balance of $139,905.97 was due under the acceleration clause contained in the act of mortgage.[1]
On June 27, 1995, defendants filed a petition in the pending suit for executory process seeking to enjoin the sale of the property on the basis that they were not in default because, at all times, they had maintained insurance coverage as mandated by the mortgage agreement.
Following a hearing, the trial court rendered judgment dismissing defendants' suit for injunctive relief. From this judgment, defendants appeal, urging the following assignments of error:
1. The trial court erred by denying defendants' application for a preliminary injunction when the trial court specifically found that defendants maintained insurance throughout the term of the mortgage in the amount mandated by the specific mortgage language.
2. The trial court erred by considering an alleged failure to properly designate an insurance loss payee as a default of the mortgage because that alleged default was not raised in either the foreclosure petition or in the thirty (30) day default notice mandated by the mortgage.
3. The trial court erred in failing to recognize that defendants established a prima facie case, fully meeting the lessened burden necessary to preliminarily enjoin an executory process foreclosure which merely preserved the status quo pending a full hearing on the merits, particularly in this case because the evidence established that Paddison, as the mortgage holder, was fully protected by insurance pending such review.
4. In the event the insurance clause of the mortgage was in any fashion ambiguous, the trial court erred in construing that clause in favor of the party who furnished the mortgage text, in violation of LSA-C.C. art. 2056, and by construing that clause in favor of the obligee and against the obligor, in violation of LSA-C.C. art. 2057.

ASSIGNMENTS OF ERROR NUMBERS ONE AND THREE
In these related assignments of error, defendants contend that the trial court erred in denying their application for a preliminary injunction because they had secured insurance coverage as required by the mortgage agreement. Thus, according to defendants, a prima facie case was established entitling defendants to preliminarily enjoin the sale of the property. We agree.
The defendant in an executory proceeding may arrest the seizure and sale of the property by injunction when the debt secured by the mortgage is extinguished, or is legally unenforceable, or if the procedure required by law for an executory proceeding has not been followed. LSA-C.C.P. art. 2751. The procedure for seeking injunctive relief is contained in LSA-C.C.P. art. 2752, which provides, in pertinent part, as follows:
A. The petition for injunction shall be filed in the court where the executory proceeding is pending, either in the executory proceeding or in a separate suit. The injunction proceeding to arrest a seizure and sale shall be governed by the provisions of Articles 3601 through 3609 and 3612, except as provided in Article 2753. However, a temporary restraining order *1136 shall not issue to arrest the seizure and sale of immovable property, but the defendant may apply for a preliminary injunction in accordance with Article 3602. In the event the defendant does apply for a preliminary injunction the hearing for such shall be held before the sale of the property.
As a matter of law, a preliminary injunction is an interlocutory procedural device designed to preserve the existing status pending a trial of the issues on the merits of the case. Federal National Mortgage Association v. O'Donnell, 446 So.2d 395, 398 (La. App. 5th Cir.1984). The applicant for a preliminary injunction need make only a prima facie showing that he will prevail on the merits. Thus, the preliminary injunction requires less proof than is required in an ordinary proceeding for a permanent injunction. Federal National Mortgage Association, 446 So.2d at 399.
According to Paddison's notice, defendants breached the mortgage agreement by failing to maintain insurance coverage sufficient to satisfy the terms of the mortgage agreement. It is undisputed that Paddison secured a second mortgage on the property and was aware of his ranking as second mortgagee from the inception of the mortgage agreement. It is also undisputed that at the time the executory proceedings were instituted by Paddison, defendants had insurance coverage, with limits of $266,000.00. The first mortgage encumbering the property was granted to Fleet Mortgage Corporation and secured the sum of $168,750.00. Paddison's second mortgage secured the sum of $150,000.00. According to Paddison, because his mortgage was a second mortgage encumbering the property, defendants were required under the terms of the mortgage agreement to maintain enough insurance to cover both the first mortgagee's interest, as well as its own, as second mortgagee. Thus, Paddison argued, the insurance coverage in the amount of $266,000.00 was insufficient.
The trial court agreed, finding that the mortgage agreement required defendants to maintain insurance coverage to cover both mortgages, and concluding that Paddison had a contractual right to accelerate the debt and foreclose on the property. Hence, defendants' petition for a preliminary injunction to arrest the sale of the property was dismissed.
To determine whether the trial court erred in denying defendants' petition for injunctive relief, we must ascertain whether defendants' actions were, in fact, in violation of their obligations under the mortgage agreement.
The provision of the mortgage agreement at issue provides, in pertinent part, as follows:
Insurance: Mortgagors hereby bind themselves to keep the building(s) on the above described property constantly insured against the risk of loss, by fire, and windstorm. Mortgagors agree to maintain fire and extended coverage insurance in the full amount of the above described mortgage note with a loss payable clause in favor of the Mortgagees or any other holder or holders of said Note....
Legal agreements have the effect of law between the parties, and courts are bound to give legal effect to all such contracts according to the true intent of the parties. Sullivan v. State, Department of Transportation and Development, 623 So.2d 28, 30 (La.App. 1st Cir.), writ denied, 629 So.2d 1179 (La.1993). The parties' intent is to be determined by the words of the contract when they are clear and explicit. Sullivan, 623 So.2d at 30. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544, 92-1545, p. 17 (La.App. 1st Cir. 3/11/94), 634 So.2d 466, 479, writ denied, 94-0906 (La. 6/17/94), 638 So.2d 1094. The terms of a clear contract must be enforced as written, provided that the agreement is not contrary to good morals or public policy. Premier Bank, National Association v. Prevost Motors, Inc., 597 So.2d 1136, 1141 (La. App. 1st Cir.), writ denied, 605 So.2d 1115 (La.1992). However, where the terms of the agreement are unclear, ambiguous or will lead to absurd consequences, the court may go beyond the original agreement to determine *1137 the true intent of the parties. Sullivan, 623 So.2d at 30.
The threshold issue is whether the provisions of the mortgage agreement herein are clear and unambiguous. After carefully reviewing the contractual provision, we conclude that the language at issue herein is clear and unambiguous. The insurance provision in the mortgage agreement clearly provides that "[m]ortgagors agree to maintain fire and extended coverage insurance in the full amount of the above described mortgage note...." The note is described in the mortgage agreement, which states that "[m]ortgagor has made and executed one Promissory Note, dated DECEMBER 16, 1994 in the sum of ONE HUNDRED FIFTY THOUSAND AND NO/100 ($150,000.00) DOLLARS, payable to the order of PADDISON BUILDERS, INC....
In rejecting defendants' suit for a preliminary injunction to enjoin the sale of the property, the trial court stated, in oral reasons for judgment:
The Court is called upon to see whether or not the notice of default was sufficient or whether the language in the mortgage is ambiguous concerning the insurance coverage and whether there has been a default concerning insurance coverage.
In reading the mortgage itself, it's obvious that they're obligated under this mortgage to have insurance, maintain fire and extended coverage in the full amount of the above described mortgage. It appears that that has been done throughout the time of the mortgage with a loss payable clause in favor of the mortgagees or any other holder or holders of said note.
This is where the difficulty arises. The Turncliffs' position is that that is ambiguous or if not ambiguous it certainly does not require anything further than a hundred and fifty thousand dollars coverage. In reading this, I don't know what else it could mean. The hundred and fifty thousand dollars, if you start naming more than one mortgagee, it certainly would dilute the coverage as it would on any check. The loss payable clause should have been a designation of a hundred and fifty thousand to cover this mortgage. Certainly, it would have been better, all parties were aware of the first mortgage, to have taken the standard form and possibly acknowledged the first mortgage and to have spelled it out. But it's ambiguous. There is not coverage of a hundred and fifty thousand specifically covering Paddison Builders as required.
It is apparent from these statements that the trial court concluded the language in this provision of the agreement was ambiguous and interpreted the agreement in accordance with what the court determined the parties must have intended. However, a court can only give effect to the contract entered by the parties; it cannot re-write the contract for them. See Executive Office Centers, Inc. v. Cournoyer, 433 So.2d 324 (La. App. 4th Cir.1983). We conclude that the trial court erred in going beyond the clear and unambiguous wording of the agreement which clearly set forth that defendants only were required to maintain "fire and extended coverage insurance in the full amount of the... described mortgage note...." Thus, the mortgage agreement had not been breached and the trial court erred in finding that Paddison had a contractual right to accelerate the entire indebtedness on this basis. Accordingly, the judgment dismissing defendants' petition seeking a preliminary injunction must be reversed. These assignments of error have merit.[2]
We recognize that our opinion herein virtually disposes of the merits of defendants' claim that they are entitled to a permanent injunction, as prayed for in their petition for injunctive relief. However, we have carefully reviewed the record and find no stipulation by the parties that all issues were to be submitted and resolved at the preliminary injunction hearing. Further, defendants' petition for injunctive relief specifically reserves the right to claim damages. Thus, it is apparent that the hearing on the preliminary injunction did not take the place of trial *1138 on the merits. See Arbour v. Total CATV, Incorporated, 400 So.2d 1155, 1156 (La.App. 1st Cir.), writ denied, 404 So.2d 264 (La. 1981). We therefore remand to the lower court for further proceedings consistent with the views expressed herein.

CONCLUSION
For the above and foregoing reasons, the August 7, 1995 judgment of the trial court in favor of plaintiff, Paddison Builders, Inc., and against defendants, Debra Britton Turncliff and Edward W. Turncliff, is hereby reversed. The stay of proceedings issued by this court on August 3, 1995 is hereby lifted, and the trial court is ordered to enter a preliminary injunction enjoining the sale of the property at issue herein in accordance with defendants' petition for injunction. The case is remanded to the trial court for further proceedings. All costs of this appeal are assessed against Paddison Builders, Inc.
REVERSED AND REMANDED WITH ORDER.
NOTES
[1] Pursuant to a provision entitled "Remedies," the act of mortgage provided that "[i]n the event the Mortgagor should violate any of the conditions of this Act, or should fail to promptly perform any obligation hereunder, ... and Mortgagor fails for a period of thirty (30) days from receipt of notice by Mortgagor from Mortgagee of notice of such default hereunder to cure such default, then the holder of the Note may, at its option, ... declare the entire balance due by the Mortgagor to holder of the note immediately due, exigible and payable, ... and ... cause the property herein described, together with all the improvements thereon, to be seized and sold under executory or other process....
[2] Because we find merit in these assignments of error, we pretermit discussion of defendants' assignments of error numbers two and four.