809 So.2d 305 (2001)
Carl WEEMS
v.
DIXIE LION WAREHOUSE & CARTIGE COMPANY and Liberty Mutual Insurance Company.
No. 2000 CA 1536.
Court of Appeal of Louisiana, First Circuit.
September 28, 2001.
*306 Michael L. Hebert, Baton Rouge, LA, for plaintiff/appellant, Carl Weems.
Constance C. Hobson, Metairie, LA, for defendants/appellees, Dixie Lion Warehouse & Cartige Company and Liberty Mutual Insurance Company.
Before: GONZALES, KUHN, and CIACCIO,[1] JJ.
GONZALES, Judge.
This is a workers' compensation case. On August 14, 1997, Mr. Carl Weems was injured on the job at Dixie Lion Warehouse and Cartige Company (Dixie Lion) when he was struck in the head with a hammer by a co-employee. He was taken *307 to North Oaks Medical Center in Hammond, where he was diagnosed with a concussion and lacerations to the scalp and forehead. He was released the same day.
The record shows that several years prior to being injured on the job, Mr. Weems was hit on the head with a beer bottle and underwent treatment by a neurologist. Mr. Weems had suffered from vertigo as a result of that incident. Also, Mr. Weems was treated for high blood pressure and diabetes prior to being injured on the job.
Mr. Weems returned to work at Dixie Lion on August 19, 1997, and continued to work until October 17, 1997, when he voluntarily resigned. He filed a disputed claim for compensation on May 12, 1999, asserting that his workers' compensation rate was incorrect and that medical treatment, including an EEG and MRI recommended by Dr. Richard Gold, which should have been authorized by Dixie Lion, had not been authorized. He asserted that vocational rehabilitation was not performed, and he requested interest, penalties, attorney fees, expert fees, costs, and all damages and benefits allowed by law. Mr. Weems asserted that Dixie Lion failed to pay and/or failed to timely pay his medical bills, prescriptions, mileage, temporary total disability, and supplemental earnings benefits.
Dixie Lion answered the claim, asserting that Mr. Weems had been paid all the benefits to which he was entitled and that he was not entitled to any further benefits under the Louisiana Workers' Compensation Act.
The case went to trial, at which time the parties entered into a number of stipulations. The parties stipulated that Mr. Weems was in the course and scope of his employment at the time of the initial accident and that he suffered injuries after the accident. The parties stipulated that Dixie Lion was his employer and stipulated to the introduction of certain evidence.
After a trial on the merits, the workers' compensation judge ruled in favor of Dixie Lion, denying the claims of Mr. Weems with prejudice. Mr. Weems is appealing that OWC order and makes the following assignments of error:
1. La.R.S. 23:1121 provides that the employee SHALL have his choice of treating physician in any field or specialty. Should Carl Weems be denied his choice of neurologist because he previously was treated by a neurosurgeon. In other words are these two specialties the same?
2. Should the claimant be awarded an attorney fee for the denial of the claimant's choice of neurologist?
3. Claimant had to pay for his visit to Dr. Richard Gold, neurologist, out of his own pocket. Should claimant be able to recover this expense?
4. Is claimant entitled to an attorney fee and penalty for the failure of the employer/insurer to pay for the treatment by Dr. Richard Gold?
5. Should the employer/insurer pay for the treatment at Our [L]ady of the Lake Hospital? If yes should a penalty and attorney fee be assessed against the employer/insurer for failing to pay the hospital visit?
6. Claimant testified that he returned to work for this employer after the accident. Since claimant returned to work he is not a candidate for TTD benefits. However, claimant returned to work at reduced hours and pay. Is claimant entitled to SEB benefits for the period of time while employed with Dixie Lion?
7. The second part of the SEB benefit concerns the period of time after Carl Weems left the employ of Dixie Lion. Was Claimant released to full duty? Was a light duty job provided? Was *308 Mr. Weems capable of earning 90% of his pre-accident wages? If not, is Carl Weems entitled to SEB benefits?
8. Is claimant's attorney entitled to an additional attorney fee for prosecution of this appeal[?].

THE STANDARD OF REVIEW
Jurisprudence clearly establishes that in workers' compensation cases, the appropriate standard of review to be applied by appellate courts is the "manifest error-clearly wrong" standard. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706, 710.
In applying the manifest error standard of review, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993); Bergeron v. Watkins, 98-0717 (La.App. 1 Cir. 3/2/99), 731 So.2d 399, 404.
Thus, if the factfinder's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, 556, quoting Sistler v. Liberty Mutual Insurance Company, 558 So.2d 1106, 1112 (La.1990); Bergeron v. Watkins, 98-0717, 731 So.2d at 404.

ASSIGNMENTS OF ERROR NOS. 1 THROUGH 4
These four assignments of error address the issue of whether Dixie Lion should have paid for Mr. Weems to be treated by Dr. Richard Gold, a neurologist, after he was treated by Dr. Anthony Ioppolo, a neurosurgeon.
Louisiana Revised Statute 23:1121(B) provides:
The employee shall have the right to select one treating physician in any field or specialty. The employee shall have a right to the type of summary proceeding provided for in R.S. 23:1124(B), when denied his right to an initial physician of choice. After his initial choice the employee shall obtain prior consent from the employer or his workers' compensation carrier for a change of treating physician within that same field or specialty. The employee, however, is not required to obtain approval for change to a treating physician in another field or specialty.
The issue of whether a neurosurgeon and a neurologist are doctors within the same specialty was addressed in Fenyes v. Highland Park Medical Center, 97-0120, (La.App. 1 Cir. 2/20/98), 708 So.2d 493. In Fenyes, the claimant was being treated by Dr. Gustavo Gutnisky, a neurosurgeon, for an extended period of time. After performing a cervical fusion on Ms. Fenyes, Dr. Gutnisky referred her to Dr. Edna Doyle, a specialist in physical medicine and rehabilitation. When her relationship with Dr. Doyle deteriorated, she sought treatment with Dr. Evan Howell, a neurologist. The workers' compensation insurer refused to authorize the change of treating physicians, stating that the claimant had made her choice in the field of neurology. This court found that the claimant had made a de facto choice of physician in the field of neurology and was not entitled to treatment by another physician in the same field.
In this case, Mr. Weems was treated by Dr. Ioppolo, a neurosurgeon, following *309 his on the job injury. Dr. Ioppolo ordered a CT scan of the brain and an EEG, both of which were normal. He then ordered X-rays of the neck, which were also normal. He later did a cervical spine MRI, which was entirely normal.
Mr. Weems continued to complain of headaches and memory problems, which Dr. Ioppolo could not explain, so Dr. Ioppolo referred Mr. Weems to Dr. Paul M. Dammers, a neuropsychologist. Dr. Dammers noted that Mr. Weems reported a history of childhood abuse and physical abuse by his father against his mother. He reported "remarkable" family history of psychiatric disturbance, with schizophrenia, bi-polar disorder and a history of depression on the maternal side.
Dr. Dammers found no cognitive impairment of Mr. Weems and assigned him no disability. Further, Dr. Dammers found that "his complaints I found to be quite bizarre, atypical, and consistent with that, the emotional testing that I did do which mainly centered around the Minnesota Multi-phasic Personality Inventory commonly referred to as the MMPI indicated a very exaggerated response, one in which the individual is describing symptoms and problems that are highly infrequent, atypical." Dr. Dammers further stated that "I would relate the findings of my examination more to premobrid personality characteristics."
Thereafter, Mr. Weems sought treatment with Dr. Richard Gold, a neurologist. Under the jurisprudence, Mr. Weems was not entitled to treatment by a neurologist after being treated by a neurosurgeon at his employer's expense.
This assignment of error has no merit, and, because of our determination of assignment of error number one, we need not address assignments of error numbers two, three and four.

ASSIGNMENT OF ERROR NO. 5
In this assignment of error, Mr. Weems argues that Dixie Lion should pay for his treatment at the Our Lady of the Lake Regional Medical Center emergency room on January 4, 2000.
Although the OWC did not specifically address this hospital visit, by ruling against Mr. Weems, the OWC implicitly found that Dixie Lion was not responsible for this bill. The record shows that the emergency room physician, Dr. Mark 0. Becker, diagnosed Mr. Weems with cervical radiculopathy, or "a pinched nerve in the neck usually caused by a protruding (herniated) intervertebral disc or bone spur in the cervical spine."
We find that, under the circumstances, the OWC did not err in failing to find Dixie Lion responsible for this hospital bill which was incurred almost two and a half years after Mr. Weems was injured at work. This assignment of error has no merit.

ASSIGNMENTS OF ERROR NOS. 6 & 7
Mr. Weems asserts that the OWC erred in not awarding him supplemental earnings benefits for the weeks that he returned to work at Dixie Lion following his injury and the time period after he voluntarily left his employment at Dixie Lion. Although the OWC did not directly address this issue, by denying all of Mr. Weems's claims against Dixie Lion, the OWC implicitly found that Mr. Weems was not entitled to supplemental earnings benefits for these time periods.
Dr. Ioppolo and Dr. Dammers both found that Mr. Weems was not disabled from working. Dr. Dammers found that the symptoms and problems reported by Mr. Weems were "highly infrequent or atypical." Mr. Weems did not complain to *310 Dr. Dammers of the characteristic signs of post-traumatic stress disorder such as intrusive thoughts, nightmares, or flashbacks regarding the subject accident. Dr. Ioppolo concurred with Dr. Dammers' opinion that Mr. Weems's symptoms and complaints were not those generally seen with a post-concussion syndrome.
Under the facts of this case, we cannot say that the OWC erred in denying Mr. Weems's claims for supplemental earnings benefits. This assignment of error has no merit.

ASSIGNMENT OF ERROR NO. 8
Mr. Weems's attorney is not entitled to an additional attorney fee for the prosecution of this unsuccessful appeal. This assignment of error has no merit.

CONCLUSION
For the foregoing reasons, the OWC order, which ruled in favor of Dixie Lion and against Mr. Weems, dismissing his claims, is AFFIRMED. Costs of this appeal are assessed against Mr. Weems.
NOTES
[1] The Honorable Philip C. Ciaccio, Judge (retired), Fourth Circuit Court of Appeal, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.