ETHAN ASSOCIATES, INC.
v.
CHARLOTTE McKAY, DAN MOSELY, NANCY SCEARCE AND CATALINA ASSOCIATES, L.L.C.
No. 2005 CA 2567.
Court of Appeal of Louisiana, First Circuit.
December 6, 2006.
W. PAUL ANDERSSON, MICHAEL J. GAUTIER JR., WILLIAM W. NEWTON, New Orleans Louisiana, Counsel for Plaintiff/Appellee, Ethan Associates Inc.
ROY H. MAUGHAN JR., Baton Rouge Louisiana, Counsel for Defendants/Appellants, Charlotte McKay and Dan Mosely.
Before KUHN, GAIDRY and WELCH JJ.
KUHN, J.
Plaintiff, Ethan & Associates, Inc. ("Ethan"), a commercial debt collection company, filed suit against its former employees, Charlotte McKay and Dan Mosely, seeking injunctive relief to enforce the provisions of certain non-competition agreements that they had signed while employed by Ethan. The trial court initially signed a temporary restraining order ("TRO") and later signed a judgment granting preliminary injunctive relief. McKay and Mosely have appealed, challenging the validity of the trial court's actions of granting the TRO and the preliminary injunction. For the following reasons, we amend that portion of the trial court's judgment that granted the preliminary injunction to provide that Ethan is required to furnish security for the injunction. We remand for the trial court to fix the appropriate amount of the security. Otherwise, we affirm the trial court's judgment.

I. FACTS AND PROCEDURAL BACKGROUND
Ethan filed suit against McKay and Mosely on March 18, 2005.[1] In its verified petition, Ethan alleged that while it employed McKay and Mosely, each of them had signed employment agreements, whereby they agreed not to work for another commercial debt collection company for a period of one hundred twenty days after leaving Ethan. Ethan also asserted that McKay and Mosely agreed that for a period of one year after the end of their employment with Ethan, they would not solicit clients they had serviced while in Ethan's employ.
Ethan further alleged that: 1) McKay and Mosely have violated their agreement through their work with Catalina & Associates, L.L.C. ("Catalina"), who is a "recently formed competitor company engaged in commercial debt collection," and 2) both McKay and Mosely have engaged in business activity in direct competition with Ethan and/or have solicited Ethan's clients, causing Ethan damages. Pursuant to the provisions of Louisiana Revised Statutes 23:921, Ethan sought a TRO, a preliminary injunction, a permanent injunction, and damages.
On March 18, 2005, the trial court issued a TRO enjoining McKay and Mosely "from soliciting clients or potential clients of [Ethan]" and "from working for any commercial debt collection agency or company for a period of one hundred twenty (120) days after leaving [Ethan]. McKay and Mosely filed an exception and rule to dissolve the TRO, urging that: 1) the TRO had been wrongfully issued; 2) the employment agreements were overly broad and unenforceable; and 3) Ethan had no cause of action. McKay and Mosely also prayed for "damages, expenses, and attorney fees rendered in connection with the dissolution of the [TRO]."
The trial court conducted a hearing that addressed Ethan's request for preliminary injunctive relief and defendants' exception of no cause of action and rule to dissolve the TRO. At this hearing, Chet Hingle, owner and officer of Ethan, testified that Ethan collects commercial debt. He stated that he requires all of his collectors and sales personnel to sign employment agreements that contain non-competition covenants; he explained that if they refused to sign the employment agreement, he discharged them. He also testified that such employment agreements are an industry standard; he did not know of any commercial collection agencies that did not impose such a requirement.
Hingle testified that McKay had worked for him for about four to five years, and Mosely had worked for Ethan since 2003. According to Hingle's testimony, neither McKay nor Mosely had ever worked for him without signing the current employment agreement. If they had not signed each agreement, they would have been terminated.
Hingle stated that the most recent employment agreement had been presented to McKay and Mosely in February 2005. Hingle testified that Mosely signed the 2005 agreement, but McKay did not. Upon her refusal to sign the agreement, McKay was discharged. One week later, Hingle learned that Catalina had been formed. At that time, Mosely was still employed by Ethan, but he had taken time off of work. Soon after, Mosely also left Ethan's employment.[2]
In March 2005, Hingle learned that McKay was soliciting clients of Ethan, who were in the business of placing debt collection business. One of Hingle's clients forwarded to Hingle a March 5, 2005 e-mail that McKay had sent to various recipients. Hingle identified several of these recipients as clients of Ethan. Within this e-mail, McKay indicated that she was no longer working for Ethan and provided her new business contact information for Catalina.
Mosely and McKay do not dispute that they each signed a 2003 employment agreement.[3] Ethan further introduced into evidence the unsigned employment agreements that were used by Ethan during 2004 and 2005. Hingle testified that he had kept all of the employment agreements in a file cabinet, and that Nancy Scearce, his former office manager who now owns Catalina, had maintained these files. Hingle testified that he did not presently know the whereabouts of the 2004 and 2005 agreements. When asked whether it was his testimony that someone went into his personnel files and stole the 2004 and 2005 agreements, he stated, "I know of no other way."
McKay testified that during her employment with Ethan, she had signed a September 2003 employment agreement, but that she had not signed another one in 2004. She further testified that on February 11, 2005, Hingle presented her with another employment agreement that she refused to sign, and upon her refusal, Hingle had terminated her employment. She acknowledged that all collectors and sales personnel had been asked to sign an employment agreement in 2004.
Dan Mosely testified that he worked for Ethan for a little over two years. He remembered signing Ethan's employment agreement in February 2003. Although he thought that he had been presented with another employment agreement in January 2004, he did not recall whether he had actually signed it, but he acknowledged that he did not recall refusing to sign it. He testified that he had previously worked for other commercial debt collection agencies, and he acknowledged that he had never worked for such an agency without being required to sign a non-competition employment agreement. However, he denied having signed Ethan's employment agreement in 2005.
Mosely also acknowledged that he sent a debt collection letter for Catalina using the alias of Paul Gunn. This letter was dated March 16, 2005. He explained that the use of an alias is a common practice in the business of debt collection.
The trial court signed a May 26, 2005 judgment that denied the defendants' "exception of no cause of action and rule to dissolve [the TRO]."[4] The judgment further granted a preliminary injunction in favor of Ethan and against McKay "in accordance with the terms of the 2004 non-competition agreement" and against Mosely "in accordance with the terms of the 2005 non-competition agreement....[5] The judgment further ordered that the provision in the 2004 and 2005 agreements referring to a "150 mile radius" was severed because it was "invalid and unenforceable."
McKay and Mosely have appealed, urging the trial court erred in issuing the TRO, in granting injunctive relief, and in failing to grant their exceptions because: 1) no proof was offered that defendants had solicited any client who had been serviced or contacted within the past 6 or 12 months; 2) no proof was offered that Ethan was carrying out a like business therein or that Ethan had completed activities in any of the 52 parishes or municipalities listed in Exhibit A [an exhibit to the non-competition agreement]; 3) the employment agreements are not enforceable because they are ambiguous; 4) the employment agreements are not enforceable because they fail to define the employer's business or the employees' duties; and 5) the employment agreements are not enforceable because they are overly broad in territorial restriction.

II. ANALYSIS

A. The Temporary Restraining Order
Louisiana Code of Civil Procedure article 3612 expressly states, "There shall be no appeal from an order relating to a temporary restraining order." However, a party may seek review of a TRO by way of an application for supervisory writs to the Court of Appeal. La. C.C.P. art. 2201. In this case, the TRO lapsed 10 days after its issuance, La. C.C.P. art. 3604, and the trial court subsequently issued the preliminary injunction that enjoined defendants' conduct in accordance with the terms of the non-competition agreements. Thus, whether the TRO was wrongfully issued is a moot issue, except to the extent that it relates to defendants' claims for damages and attorney fees. La. C.C.P. art. 3608.
Without addressing the propriety of the TRO, we conclude that defendants are not entitled to recover damages and attorney fees. Our review of the record reveals that defendants did not introduce any evidence of actual damages sustained as a result of the TRO's issuance. As such, they are not entitled to recover monetary damages. Likewise, because the TRO dissolved by operation of law prior to the time defendants filed their rule to dissolve the TRO, defendants have not established that they incurred attorney fees for services rendered in connection with the dissolution of the TRO. Thus, they are not entitled to recover attorney fees. La. C.C.P. art. 3608; see Lewis v. Adams, 28,496, p. 8 (La. App. 2d Cir. 8/21/96), 679 So.2d 493, 498; Gaudet v. Reaux, 450 So.2d 1009, 1011 (La. App. 1st Cir. 1984). Accordingly, we find no error in the trial court's denial of defendant's rule to dissolve the TRO.

B. The Preliminary Injunction
In its reasons for judgment, the trial court found that Hingle's testimony "established that Mosely signed a non-competition agreement on or around February 15, 2005, in addition to those signed in 2004 and 2003, and that McKay had in fact signed an agreement each year until 2005." We find no manifest error in these factual findings. Accordingly, Louisiana Revised Statutes 23:921, as amended by Acts 2003, No. 428, governs the interpretation of the agreement signed by McKay in 2004 and the agreement signed by Mosely in 2005.
Louisiana Revised Statutes 23:921 provides in pertinent part:
A. (1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void.
...
C. Any person ... who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment....
D. For the purposes of Subsections B and C, a person who becomes employed by a competing business, regardless of whether or not that person is an owner or equity interest holder of that competing business, may be deemed to be carrying on or engaging in a business similar to that of the party having a contractual right to prevent that person from competing.
...
H. Any agreement covered by Subsections B, C, E, F, or G of this Section shall be considered an obligation not to do, and failure to perform may entitle the obligee to recover damages for the loss sustained and the profit of which he has been deprived. In addition, upon proof of the obligor's failure to perform, and without the necessity of proving irreparable injury, a court of competent jurisdiction shall order injunctive relief enforcing the terms of the agreement.
(Emphasis added.)
The issuance of a permanent injunction takes place only after a trial on the merits in which the burden of proof is a preponderance of the evidence, but the trial court may issue a preliminary injunction on merely a prima facie showing by the plaintiff that he is entitled to relief. Mary Moe, L.L.C. v. Louisiana Bd. of Ethics, 03-2220, p. 9 (La. 4/14/2004), 875 So.2d 22, 29. Thus, the preliminary injunction requires less proof than is required in an ordinary proceeding for a permanent injunction. Paddison Builders, Inc. v. Turncliff, 95-1753, pp. 4-5 (La.App. 1st Cir. 4/4/96), 672 So.2d 1133, 1136, writ denied, 96-1675 (La. 10/4/96), 679 So.2d 1386. A preliminary injunction is an interlocutory procedural device designed to preserve the status quo as it exists between the parties pending trial on the merits, and we will disturb the finding of the trial court only upon a showing of abuse of its great discretion. Giauque v. Clean Harbors Plaquemine, L.L.C, 05-0799, pp. 6-7 (La.App. 1st Cir. 6/9/06), 938 So.2d 135, 140.
In their respective employment agreements, McKay and Mosely agreed to refrain from various business practices within one year after their employment with Ethan ended. Additionally, the 2004 and 2005 employment agreements both included the following pertinent language:
[F]or the first 120 day period after my leaving [Ethan] for any reason, I agree not to work in the commercial debt collections industry in Louisiana in any of the parishes or municipalities and within a 150 mile radius in which [Ethan] completes activities as identified on Exhibit A to this Agreement.
The referenced exhibit in both the 2004 and 2005 agreements included the names of multiple parishes, including St. Tammany Parish.
The testimony and evidence introduced at the hearing established that Ethan was engaged in the business of commercial debt collection in St. Tammany Parish. The March 5, 2005 e-mail sent from McKay to several of Ethan's clients and the March 16, 2005 letter sent by Mosely under his "Paul Gunn" alias establish that both McKay and Mosely were working for Catalina, a competitor business also engaged in commercial debt collection in St. Tammany Parish. As such, Ethan established that McKay and Mosely had breached their respective obligations not to compete with Ethan in St. Tammany Parish. Pursuant to Louisiana Revised Statutes 23:921H, upon such proof of McKay and Mosely's failure to perform in accordance with their respective employment agreements, Ethan was entitled to injunctive relief enforcing the entirety of the employment agreements without establishing that McKay and Mosely had breached each individual obligation of the employment agreement. Thus, in order to obtain injunctive relief, Ethan did not have to establish that the clients solicited by McKay and Mosely were clients that had been previously serviced or contacted within a certain time period, as otherwise prohibited by the respective employment agreements.
Likewise, in order to obtain injunctive relief, Ethan did not have to establish that it actually engaged in debt collection in every parish listed in Exhibit A; Ethan only had to establish a violation of the defendants'"obligation not to do." La. R.S. 23:921H. Otherwise, we find that the list of parishes contained in Exhibit A conforms to the requirements of Louisiana Revised Statutes 23:921(C), and we do not find that the list of parishes renders the agreements overbroad.
Defendants further argue that the employment agreements are invalid because they are ambiguous.[6] They contend the provisions prohibiting client solicitation can be interpreted as prohibiting solicitation of clients that have been contacted within 12 months of the date that the agreement was signed or as prohibiting solicitation of clients that have been solicited within the last 12 months of employment.
At this juncture, more than one year after the injunction has issued, it is not necessary for us to interpret the contested language. If Ethan seeks damages based on a violation of this particular provision, any ambiguities in such language will be construed against Ethan, as the party who drafted the contract, in determining whether further breaches of the employment agreements have occurred and in determining the amount of any damages. See La. C.C. art. 2056. We find no authority to support the defendants' assertions that the language in question renders the agreements entirely unenforceable.[7]
Defendants also challenge the enforceability of the employment agreements, urging they fail to define the employer's business and the employees' duties. Both the 2004 and 2005 agreements specifically reference Ethan as "A COMMERCIAL DEBT COLLECTION COMPANY," which sufficiently describes the employer's business. See Baton Rouge Computer Sales, Inc. v. Miller-Conrad, 99-1200, pp. 3-4 (La. App. 1st Cir. 5/23/00), 767 So.2d 763, 765. Likewise, the agreements list various job descriptions and responsibilities of a "collector" and a "sales representative," and there is no doubt that Mosely and McKay knew the type of business they were agreeing not to engage in when they signed their respective employment agreements.
For these reasons, we find no error in the trial court's conclusion that Ethan's employment agreements were valid and enforceable, and we find no abuse of discretion in the trial court's issuance of the preliminary injunction in favor of Ethan. Based on the evidence presented at the hearing, Ethan made a prima facie showing that McKay and Mosely had breached their respective employment agreements and that Ethan was entitled to a preliminary injunction enforcing the employment agreements, as modified by the trial court.[8] Accordingly, the trial court properly denied defendants' exception of no cause of action.
However, we do find merit in defendants' argument that the trial court should not have issued the preliminary injunction without requiring Ethan to furnish security, as required by Louisiana Code of Civil Procedure article 3610. There is no applicable statutory provision exempting Ethan from furnishing security.
When an injunction has been granted without security, an appellate court may either set aside the preliminary injunction or remand the matter to the trial court for the fixing of security. Hernandez v. Star Master Shipping Corp., 94-1553, p. 5 (La. App. 1st Cir. 4/7/95), 653 So.2d 1318, 1321. Thus, we find the interests of justice and judicial economy are best served by remanding this matter to the trial court to require Ethan to furnish security. Lassalle v. Daniels, 96-0176, p. 9 (La.App. 1st Cir. 5/10/96), 673 So.2d 704, 710, writ denied, 96-1963 (La. 9/20/96), 679 So.2d 435, cert. denied, 519 U.S. 1117, 117 S.Ct. 963, 136 L.Ed.2d 848 (1997). Under Article 3610, the security which must be furnished in conjunction with the issuance of a preliminary injunction must be sufficient to indemnify a person wrongfully enjoined "for the payment of costs incurred and damages sustained." Thus, on remand, the trial court is to fix the security in an amount consistent with Article 3610. High Plains Fuel Corp. v. Carto Intern. Trading, Inc., 93-1275, p. 11 (La. App. 1st Cir. 5/20/94), 640 So.2d 609, 616, writ denied, 94-2362 (La. 11/29/94), 646 So.2d 402.

III. CONCLUSION
For these reasons, the May 26, 2005 judgment granting the preliminary injunction against defendants is amended to provide that Ethan is required to furnish security for the injunction. Otherwise the trial court's judgment is affirmed. In accordance with the views expressed in this opinion, this matter is remanded to the trial court, which is ordered to fix the appropriate amount of security. One-third of the costs of this appeal are assessed against each party involved in this appeal, Ethan, Mosely and McKay.
AFFIRMED AS AMENDED; REMANDED WITH ORDER.
WELCH, J., DISSENTING.
I respectfully dissent and write separately to note my concern that in affirming the trial court's injunction, the majority has failed to apply the longstanding public policy of this state disfavoring noncompetition agreements, which requires that such agreements be very strictly construed. Applying those principles to the agreements at issue in this case, I find the agreements to be fatally flawed in numerous respects, rendering them invalid. Therefore, for the reasons detailed below, I strongly believe the trial court erred in not vacating the TRO issued on March 18, 2005, prohibiting defendants, Dan Mosely and Charlotte McKay, from soliciting clients and potential clients of plaintiff, Ethan & Associates, Inc. and working for any commercial debit collection agency.
Citing the recent case of SWAT 24 Shreveport Bossier, Inc. v. Bond, XXXX-XXXX (La. 6/29/01), 808 So.2d 294, our Supreme Court recently reiterated the law and public policy of this state regarding noncompetition agreements:
Louisiana has long had a strong public policy disfavoring noncompetition agreements between employers and employees. Thus, the longstanding public policy of Louisiana has been to prohibit or severely restrict such agreements. This public policy is expressed in La. R.S. 23:921(A)(1), which provides: Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void. Louisiana's strong public policy restricting these types of agreements is based upon an underlying state desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden. Because such covenants are in derogation of common right, they must be strictly construed against the party seeking their enforcement. The exceptions to this provision are specifically enumerated by the statute and provide for employer/employee relationships, corporation/shareholder relationships, partnership/partner relationships and franchise/franchisee relationships. The statute defines the limited circumstances under which a noncompetition clause may be valid in the context of each of these relationships. The exception at issue in the instant case is provided for by Section (C), which reads: Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.
Kimball v. Anesthesia Specialists of Baton Rouge, Inc., XXXX-XXXX (La. App. 1st Cir. 9/28/01), 809 So.2d 405, 410-411, writs denied, XXXX-XXXX, XXXX-XXXX (La. 3/8/02), 811 So.2d 883, 886; XXXX-XXXX (La. App. 1st Cir. 9/28/01), 809 So.2d 305, 410-411 (citations omitted, footnote omitted). In construing the non-compete agreement, the Supreme Court in SWAT 24 stated:
An agreement limiting competition must strictly comply with the requirements of La. R.S. 23:921. We must strictly construe statutory exceptions, such as La. R.S. 23:921(C), because the "longstanding public policy of this state disfavoring agreements not to compete." Although evaluating a different issue relative to a noncompete agreement, the supreme court in SWAT 24 noted that the "public policy disfavoring such agreements remains strong" and also noted its longstanding rule that "[b]ecause [non-compete] covenants are in derogation of the common right, they must be strictly construed against the party seeking their enforcement." Thus both the noncompete clause itself and the exception contained in LSA-R.S. 23:921(C) must be strictly construed.
Kimball, 809 So.2d at 411 (citations omitted).
In this case, The TRO was issued pursuant to the petition filed, with the two 2003 employment agreements attached, the affidavit and a verification by Chet Hingle, and two e-mails. Defendants' exceptions and motion to dissolve the TRO requested damages and attorney fees.
In its written reasons, the trial court opined that "[t]he Court likewise finds the defendants' arguments that the TRO was improperly issued due to technicalities to be without merit or rendered moot by the granting of the preliminary injunction."
Contrary to the trial court's assessment, my review of the record reveals that the defendants' complaints regarding the issuance of a TRO amount to, much more than "technicalities." Moreover, this circuit has held that simply complying with "the spirit of 921" is not sufficient." Turner Professional Services, LTD v. Broussard, 99-2838 (La. App. 1st Cir. 5/12/00), 762 So.2d 184, writ denied, XXXX-XXXX (La. 9/29/00), 770 So.2d 356. I find that several provisions in the agreements are contrary to law rendering the agreements invalid for all the reasons detailed below.
First, the TRO was issued without bond. See Montelepre Inc. v. Pfister, 355 So.2d 654 (La. App. 4th Cir. 1978), holding that the trial court erred in issuing the restraining order without requiring security, and the order is therefore invalid. See also Glass v. Wiltz, 483 So.2d 1248 (La. App. 4th Cir. 1986); Lambert v. Lambert, 480 So.2d 784 (La. App. 3rd Cir. 1985); Cochran v. Crosby, 411 So.2d 654 (La. App. 4th Cir. 1982) (each holding that a preliminary injunction should be vacated and set aside if the trial court issues the injunction without security being furnished). The majority cites several first circuit cases holding that vacating an improper preliminary injunction is not necessary in all cases issued without security and that in some instances the case should be remanded to the trial court with directions that security be furnished.[1] These cases do not apply to TRO's that have already been extinguished by operation of law. Further, the decisions ordering a remand for the "after-the-fact" posting of the required bond for preliminary injunctions are predicated on a finding that it would not serve any useful purpose to set aside the injunction due to the lack of security. A close review of those cases reveals that a remand was ordered only in cases where it is clear from the record that the injunction was, otherwise, properly granted. Because, for the reasons that follow, I believe the trial court erred in granting the TRO and preliminary injunction on other bases, I would find it proper, and in accordance with the jurisprudence, to invalidate the issuance of the TRO and the preliminary injunction on the issue of the failure to provide the requisite security.
The trial court also erred in not finding the TRO was improvidently issued and not allowing defendants to put on evidence concerning damages for the reasons detailed below.[2] The trial court signed a TRO on March 18, 2005, prohibiting defendants Dan Mosely and Charlotte McKay from soliciting clients or potential clients of plaintiff, Ethan & Associates or from assisting anyone else in contacting, soliciting or providing services to clients or potential clients of Ethan & Associates, for one year from cessations of their employment. Defendants further were prohibited from working for any debt collections agency or company for a period of 120 days after leaving Ethan & Associates.
The TRO enjoined defendants Mosely and McKay from working for any commercial debt collection agency or company for a period of 120 days, anywhere. By not limiting the TRO to the geographical limitation in the employment contracts, the TRO was fatally flawed.
The employment contract also contained a provision that prohibited defendant Mosely from working as an employee or otherwise in the debt collection industry for 120 days after leaving his employment with Ethan & Associates. This provision of the employment contract, which was enforced via the TRO, was absolutely invalid. The TRO was based on the employment contract that was attached to the original petition for damages as exhibit 2. The signing date of the employment agreement was February 3, 2003. Pursuant to the Louisiana Supreme Court decision in SWAT 24, an employer could not prohibit an employee from going to work as an employee in a competitor's business. However, Louisiana Revised Statutes 23:921 was amended by Acts 2003, No. 428, effective August 15, 2003; wherein after the effective date an employer could prohibit an employee from working in a competitor's business. The case law interpreting this amendment holds that the amendment was substantive and not retroactive;[3] therefore, because SWAT 24 governed the February 3, 2003 employment contract, it was clear error for the trial court to grant the TRO enjoining defendant Mosely from working as an employee in the commercial collection industry.
The TRO also prohibited defendant McKay from employment and solicitation in accordance with her employment contract, which was attached as exhibit 1. Her signing date on the contract was September 2, 2003; therefore, the amendments to La. R.S.23:921 were applicable. However, additional grounds, discussed below, exist for invalidating the agreement as to her as well, and entitling both defendants to a remand for a hearing and the opportunity to present evidence on damages.
Each agreement provides that the employee will not "contact nor solicit these Clients and Potentials" of the employer. Further, the employee will not assist anyone else, including the new employer or new co-employees from contacting, soliciting, or providing services for these clients or potential clients. The contract defines "the clients" as clients that "you have serviced within the last 6 months"[4] and "potential clients" as those individuals contacted within the last six months. The contract further provides that the "for 1 year after your employment ends, whether you work in Louisiana or any other state, you will not contact nor solicit these Clients and Potentials."
The contractual provisions are overly broad when compared to the nonsolicitation provision of La. R.S. 23:921(C). Louisiana Revised Statutes 23:921(C) simply allows the prohibition of "soliciting" customers of the employer." The prohibition in the agreements in this case prohibit the employees from soliciting "potential clients," defined as a person who has been contacted within the last six months, regardless of whether they actually engaged in a business transaction with the employer. The "potential client" clause of the employment contract clearly exceeds the narrow exception established in R.S. 23:921(C).
The agreements prohibit the defendants from working in the commercial debt collection industry in all parishes and municipalities listed in exhibit (a), which virtually prohibited defendants from working in the debt collection industry anywhere in the State of Louisiana. In order for an employer to prohibit an employee from working in a competing business, the employer must show it "carries on a like business therein." The record is totally devoid of any evidence showing compliance with the statute in this regard. Moreover, the jurisprudence indicates that a "blanket list" of all or most of the parishes in the State, without more, is overly broad in its geographical limitations and thus unenforceable. See Kimball, 809 So.2d at 412; Turner 762 So.2d at 185; SWAT 24, 808 So.2d at 1050; Daiquiri's III on Bourbon, LTD. V. Wandfluh, 608 So.2d 222 (al App. 5th Cir. 1992), writ denied, 610 So.2d 801 (La. 1993).
Finally, while I agree that the jurisprudence clearly allows courts to simply sever the offending provisions, as was done in this case with regard to the 150-mile radius restriction, this type of provision has been held to be invalid since 1996. See AMCOM of Louisiana, Inc. v. Battson, 96-0319 (La. 3/29/96), 670 So.2d 1227. I am concerned that continuing this trend of simply severing these offending and invalid provisions without invalidating the entire agreement only encourages an employer to include legally invalid clauses in their employment agreements knowing that, if challenged, the only penalty to be suffered will be severance of the invalid restriction.[5] Our law mandates that we discourage noncompetition agreements and that such agreements be strictly construed. The only way to truly accomplish this goal is to follow the law and invalidate offending agreements in their entirety if they contain clauses that are facially in conflict with La. R.S. 23:921. In my opinion, such a conclusion should have been reached in this case for any one of the many reasons cited herein.
NOTES
[1] Ethan also named as defendants, Catalina & Associates, L.L.C. and Nancy Scearce, who is alleged to be the "founding owner of Catalina." Ethan's claims against Catalina and Scearce were not addressed in the trial court's May 26, 2005 judgment that we now review on appeal.
[2] While the record does not definitively establish Mosely's last date of employment, the record establishes it was no earlier than February 28, 2005 and no later than March 7, 2005.
[3] The 2003 employment agreements that McKay and Mosely admitted signing were attached to Hingle's affidavit, which was filed into the record as an exhibit to Ethan's verified petition.
[4] The trial court implicitly rejected defendants' claim for damages and attorney fees.
[5] The trial court also signed a second judgment dated June 1, 2005 that granted Ethan preliminary injunctive relief and denied defendants' exception of no cause of action and rule to dissolve the TRO. We recognize that this judgment had no legal effect. When a trial judge signs a judgment and then signs another, the second judgment is an absolute nullity and without legal effect. McGee v. Wilkinson, 03-1178 (La. App. 1st Cir. 4/2/04), 878 So.2d 552, 554-555.
[6] The contested language provides, in pertinent part:

I agree that:
(1) Clients that I have serviced within the last 12 months ("the Clients") and potential clients ("the Potential Clients"), that I contacted within the last 12 months are [Ethan] property. Should I leave [Ethan] for any reason, then for 1 year after my employment ends, whether I work in Louisiana or any other state, I will not contact nor solicit these Clients and Potentials. I will also not assist anyone else, including my new employer or new co-employees, from contacting, soliciting or providing services for these Clients or Potential Clients. I also agree that should I leave [Ethan] and work in Louisiana in any of the parishes or municipalities in which [Ethan] completes activities as identified on Exhibit A of this Agreement, then the same non-compete obligations exist for the identified Clients and Potential clients.
[7] We further note that the 2004 and 2005 employment agreements each contain a severability clause stating:

Should a court ever decide that any portion of this Agreement is not enforceable, the unenforceable provision may be modified by a court to the extent necessary to satisfy the intent of this Agreement and to be consistent with applicable laws. In addition, the remainder of my obligations shall be enforced to the fully (sic) extent intended permitted by law.
[8] The trial court reformed the contract by striking the "150 mile radius" language. Because this language is not in conformity with Louisiana Revised Statutes 23:921(C), and because the employment agreements contain severability clauses, the trial court's reformation was appropriate. SWAT 24 Shreveport Bossier, Inc. v. Bond, 00-1695, pp. 22-24 (La. 6/29/01), 808 So.2d 294, 308-309.
[1] The TRO also failed to indicate notice or that an attempt at notice was made, or the date and hour of issuance. See La. C.C.P. arts. 3602, 3604. Although there was testimony that the defendants had actual notice prior to presentation to the trial court, the TRO was nonetheless flawed from this technical standpoint.
[2] The majority concludes that since defendants did not put on evidence of actual damages at the hearing, they are not entitled to damages. Implicit in the trial court's ruling was that the trial court would consider the motion to dissolve filed by the defendants at the hearing on April 28, 2005, and should the court grant the motion to dissolve, which was taken under advisement, the trial court would hear the issued regarding damages. This never happened because the trial court found the "technical" issues raised by the defendants to the TRO were rendered moot by the granting of the preliminary injunction.
[3] Clear Channel Broadcasting, Inc. v. Brown, XXXX-XXXX (La. App. 4th Cir. 3/30/05), 901 So.2d 553; Sola Communications, Inc. v. Bailey, 2003-905 (La. App. 3rd Cir. 12/10/03), 861 So.2d 822, writ denied., 04-0107 (La. 3/19/04), 869 So.2d 858.
[4] The 2004 and 2005 agreements increased this limitation from six months to one year.
[5] See Carey C. Lyon, Oppress the Employee: Louisiana's Approach to Noncompetition Agreements, 61 La. L. Rev. 605 (2001).